## MARTIN'S HEIRS AND ADM'RS. *vs.* MARTIN.

1. The statutory jurisdiction of the Court of Probate in the allotment of dower is in derogation of the common law, and the proceedings must therefore conform to the statute in every essential particular. The petition must allege the marriage, the seizin of the husband during coverture, and his death; it must contain a description of the lands in which dower is claimed, and aver that they lie in the county where the petition is filed; it must also show whether the deceased died testate or intestate, who are his heirs, who his personal representatives, if any, and who the tenants of the freehold; the record must also show that the necessary parties are before the court.

2. An allegation in the petition that the demandant is the *widow* of the decedent, is not a sufficient averment of their *marriage.*

3. An allegation that the decedent died in the county in which the petition is filed, "seized and possessed of the following lands," is not a sufficient averment that the lands are situated in that county.

4. An allegation that certain named persons "are his *only legitimate children,*" is not a sufficient averment that they are the *only heirs at law* of the decedent.

5. In the exercise of its summary jurisdiction over the subject of dower, the Court of Probate has no equity jurisdiction, but proceeds according to the rules of law; so that if the demandant has a legal right to dower, it is the duty of the court to allot it, irrespective of considerations which are purely of equitable cognizance.

6. Though a man marries never so often, he can have but one lawful wife living; so long as she is alive, and the marriage bond remains in full force, all his subsequent marriages, whether meretricious or founded in mistake and at the time supposed to be lawful, are utterly null and void, and no decree of divorce is necessary to annul them.

7. When a woman marries a man who has another wife living, such marriage imposes no obstacle to her subsequent marriage with another man; and the fact that, at the time of her supposed first marriage, she knew that such former wife was living, would not in any manner affect her subsequent marriage, or her right to have dower in her husband's estate allotted to her by the Court of Probate.

8. Proof of marriage by an eye-witness is not required, nor is it indispensable that the license with the minister's return thereon endorsed should be produced; it is only necessary that the proof should be sufficient to satisfy the jury that the marriage did actually take place.

9. The bond given by the intended husband, preliminary to obtaining a license, is relevant and. legal proof of the marriage; but when the marriage was celebrated in another State, to make a certified copy. of the bond admissible in evidence here, it should be shown that it was required by the laws of that State to be recorded, and the copy should be authenticated according to the act of Congress of 1804. (Clay's Dig. 619.)

10. The Court of Probate has no jurisdiction to go into an inquiry, whether the lands in which dower is claimed were purchased by the deceased with money obtained by him from a woman with whom, after a voluntary separation between him and demandant, he had contracted a supposed marriage, and with whom, as his lawful wife, he lived until his death.

11. The wife cannot, under any agreement entered into during coverture with her husband, bar her right of dower; nor will she be estopped, in a court of law, from asserting her claim, by any recognition on her part, after a voluntary separation from her husband, of his right to marry another woman, or of the validity of his supposed subsequent marriage.

12. When no provision is made for the widow by the husband's will, she may claim dower without any express dissent from it.

13. When the subject matter of the litigation arises out of a contract either express or implied, a married woman may be estopped by acts or declarations upon which others have been induced to act, and against the truth of which it would work fraud and injustice for her to aver; but this doctrine can have no application to dower, which does not arise out of, and is not dependent upon any contract.

14. When a petition for dower is defective for want of the proper parties and necessary allegations, it may be amended; and in such case the Appellate Court will not dismiss the petition, but will remand the cause, that the proper amendments may be made.

ERROR to the Court of Probate of Perry.

This was a PETITION for dower, filed in the Probate Court of Perry county, by Betsey Martin, in which it is averred, that she is the widow of Shadrach Martin, late of said county, deceased, and as such entitled to dower in the real and personal estate of which he died seized and possessed; that he died seized of divers parcels of land, which are particularly described in the petition; also, of a large number of slaves and other personal property in said county, a list of which has been returned to said Probate Court by the administrator with limited authority appointed by said court, and which list, it is prayed, may be considered a part of the petition, if necessary; that said Shadrach Martin left surviving him the

following named legitimate children only, viz: Hiram, Oran, Pleasant, and John Y. Martin, and Alice McGill, late Martin, wife of Daniel McGill, and Martha Corley, late Martin, wife of Wiley Corley.

Petitioner prayed the court for the appointment of suitable commissioners to set apart her dower in said real and personal property, according to the statute in such case made and provided.

Upon the exhibition of this petition, a day was appointed for its hearing, publication ordered, and a citation directed to issue notifying the heirs of Shadrach Martin of the nature of the petition, and of the time and place of hearing the same.

It appears that, on the 9th day of September, 1850, that being the day set apart for the hearing of the petition, the cause was continued by consent of the parties until the 25th November, when it was continued at the instance of the plaintiff until the 15th January, 1851, at which time it was again continued by consent until the 10th February, then next. Coming up again at this latter period, it was continued by the defendants until the 10th March, 1851, when, on motion of the defendants, it was ordered that a jury be empannelled to try the issue involved in the petition, and the cause was again continued by the defendants, on the payment of the costs of the term, until the 16th April, 1851, and was then continued by them again until the 14th of May following, when the cause was taken up for final hearing.

The petitioner then moved the court for leave to amend her petition so as to aver that Mary Martin, one of the defendants, was then in possession of the land described in the petition. This leave was granted, and the defendants excepted. The defendants then demurred to the petition, which demurrer was overruled by the court.

P. B. Raiford and Mary Martin are the only persons who appeared to contest the petitioner's demand. The first named filed two pleas in abatement of the petition, namely: 1st. That he was not, at the time of the filing of the petition and issue of the notice thereon, nor at any time, either the executor or administrator of the estate of Shadrach Martin, as in the notice served upon him is supposed; but that he was appointed administrator of said estate with limited authority,

and for special specified purposes, namely: for collecting the debts due to, and paying the debts owing by the deceased, making an inventory of the assets of the estate, and taking care of them pending the controversy in the Probate Court respecting the validity of the will of the deceased, and until the same should be determined, and by virtue of which said temporary appointment he, the said Raiford, took possession of the lands described in the petition, and now holds the same in virtue of his said appointment, and not otherwise; wherefore he prayed that the petition, notice and proceedings thereon might be quashed; all of which was verified by affidavit.

The second plea in abatement avers that the defendant, Raiford, was appointed by the Judge of Probate, on the 25th June, 1850, administrator on the estate of Shadrach Martin, only for and during the continuance of a controversy then pending and undetermined in said Probate Court, in which was involved the validity of the will of said Shadrach Martin, deceased, and which appointment was to cease upon the final determination of said contest in said court respecting the said will. He then avers that the said contest was, at the time of pleading, fully completed and ended, and the matter of litigation fully determined; wherefore he prays whether the said demandant ought to have or maintain her said claim against him.

Mary Martin pleads separately in abatement, that although named in the will of Shadrach Martin, as executrix thereof, with Lewis Johnson, executor, yet she is not such executrix, never having qualified as such, nor in any manner taken upon herself the execution of said will or the administration of said estate; and that she had not the possession of the said lands in the petition named, but they were in the possession of her co-defendant, Raiford, who held them under limited authority, &c. To each of these pleas demurrers were sustained.

The defendants then filed fifteen special pleas in bar of the demandant's right to dower, in addition to a general denial of her right, as by her petition the same is asserted. As these pleas would cover much space, and a statement of them in full is not deemed necessary to the proper understanding

7

of the opinion of the court, it is unnecessary to insert them at length; but to make as brief a designation of them as may be:

1. The first denies that demandant is the lawful widow.

2. The second avers that Mary Martin, one of the defendants, is the lawful widow of the deceased.

3. The third, that the will and codicil of the deceased was propounded for probate to the Probate Court of Perry, by said Mary, named therein the wife and appointed executrix of the deceased, upon notice to demandant, and after being contested was established and duly proved in 1850. The will, a copy of which accompanies the plea, disposes of his entire estate, and makes provision for defendant, Mary, as his widow.

4. The fourth avers, that upon such contest, Levi Martin and others put in issue, that the said Mary was not the lawful widow of said deceased, nor his lawful wife, and that the will was found to be valid and allowed to be proved, as in all things good, &c.

5. The fifth avers, that by the will of the deceased, and which was duly admitted to probate, certain lands were devised to George M. and Mary L. Martin, who are minors, the same lands being a portion of those embraced in the petition for dower, and that said minors are not parties to this proceeding.

6. The sixth plea avers, that demandant was not at any time the lawful wife of said deceased, but on the contrary, admits the marriage, but avers that the same was null and void, because said demandant had at that time a lawful husband living, namely, one David Todd; that said Shadrach married her in ignorance of that fact, and having afterwards ascertained it, viz: in 1826, separated from her, and has never since recognized her as his wife, nor been recognized by her as her husband; that after the separation, the said Mary, believing the said Shadrach to be a single man, married him, and brought to him of her money twenty-five hundred dollars, with which he entered the land out of which dower is claimed; that she lived with him as his lawful wife until his death, in ignorance of any lawful impediment, becoming the' mother of two children by him, namely, George M. and

Mary L. Martin; and that in equity, the land named in the petition belongs to her.

7. The seventh avers, that no administration was granted, or letters testamentary were issued upon the estate until after the petition was filed, viz: on the — day of ——, 1850, when letters were granted to said Mary.

8. The eighth is a separate plea by Raiford, setting forth his limited appointment as administrator of the estate of the deceased, his office to continue until the contest about the will should be ended, and that letters testamentary have issued to said Mary Martin, the executrix named in the will.

9. By the ninth plea, the defendants set up the will of the deceased, its formal establishment upon a regularly conducted contest; that it makes provision for Mary, one of the defendants, in lieu of her dower; that letters testamentary have issued to her, and that the twelve months allowed her by statute to dissent from said will, have not elapsed, and that she has taken possession of the lands devised to her by the will.

10. The tenth plea asserts that letters of administration were not granted anterior to 1850; that the estate is indebted to said Mary Martin in the sum of twenty-five thousand dollars, for the payment of which no provision has been made, and that therefore the estate is not in a condition to be now settled, or for the assignment of dower.

11. The eleventh plea alleges that the deceased, in his lifetime, married one Mary Campbell, with whom he lived and cohabited as his wife, down to his death, embracing a period of twenty years; that he had by her two children, which he has raised in respectability; that he made his will, which has been duly proved, and by it made provision for the said Mary as his wife, in lieu of dower, and the twelve months allowed her to dissent from the will, have not elapsed.

12. The twelfth plea avers, that for a full and valuable consideration, the demandant, being the wife of the deceased, on the 3rd October, 1826, through her trustee, released and relinquished all her claim to dower, which consideration was paid to her, and with which she was content until she filed her petition.

13. In the thirteenth plea it is alleged, that both demand-

ant and the said Shadrach, believing the said Betsey to be a single woman, intermarried, but finding, on the 3rd day of October, 1826, that said Betsey had a former husband, (David Todd,) then living, they promptly agreed to separate and no longer to cohabit together; thereupon, it was mutually agreed that written articles of separation should be entered into between said Shadrach and Joshua Todd, as trustee for said Betsey, the demandant, which articles were accordingly executed, and are set out in the plea, by which said Shadrach conveys to Todd in trust, for the sole and separate use of said Betsey, three cows, twelve bushels of corn, and two hundred pounds of pork, yearly for two years, in consideration of which said Betsey accepts the same as a provision for her separate maintenance, and thereby releases all claim to dower or to any further support, as well as all claim to any other portion of said Shadrach's estate, and agrees to live separate from him without any further charge, &c.; and said Betsey, being privately examined before a justice of the peace, apart from her husband, acknowledged that she signed, sealed and voluntarily executed said instrument, without any fears, threats, or compulsion on his part. The plea avers that said Betsey received and enjoyed this provision made for her, and that the parties never thereafter cohabited together.

14. The fourteenth plea is the same with the thirteenth, except the additional averment, that the property so received by the said Betsey "was a fair and reasonable portion of the estate of said Shadrach Martin."

15. The fifteenth plea is like the thirteenth, but has the superadded averment, that at the time of said agreement and release by said Betsey, the said Shadrach had and owned the following property, to wit: nine cows and thirty-six bushels of corn and six hundred pounds of pork, &c.

The demandant demurred to each of these pleas, from three to fifteen inclusive, and the court sustained demurrers to all but the fifteenth, and held that good.

Issue was taken upon the other pleas, (Nos. 1, 1½ and 2,) and as to the matter of the fifteenth plea, demandant replied that, admitting the said Shadrach at the time of said release owned the property mentioned in said plea, yet he then

owned, in addition thereto, nine valuable slaves, a large quantity of land, and a large number of horses, cattle and hogs, amounting in value to eight thousand dollars.

To this replication there was a demurrer, but the court overruled the demurrer, and the defendants took issue thereon.

Thereupon came a jury to try the issues, who found "said Betsey to be the true and lawful widow of said Shadrach Martin, and that she is entitled to dower as prayed for in her petition." It was therefore considered by the court, that she recover dower in the estate of said Shadrach, deceased, and it was ordered that a writ issue to the sheriff of said county, "commanding him to summon commissioners to set apart and allot to the said Betsey Martin, her dower in the estate of the said Shadrach Martin, deceased, and to put her into possession of the same in manner and form pointed out by the statute in such case made and provided"

A bill of exceptions was sealed at the trial, containing the evidence on both sides, and numerous objections to testimony, as well as exceptions on the part of the defendants in the court below, to charges given by the court, and to refusals to charge as prayed by them. All the facts, however, which are necessary to a proper understanding of the case, and the points decided, will appear sufficiently in the opinion of the court.

I. W. GARROTT, for plaintiffs in error :

I. The Probate Court erred in overruling the demurrer to the petition. The petition is defective: 1. Because it does not show whether the decedent died testate or intestate; so that it is impossible to determine whether or not his heirs at law are entitled to the land. 2. Because it does not aver that the legitimate children of Shadrach Martin who are named in the petition are his only heirs or devisees. 3. Because it does not show who is administrator or executor of the decedent, nor that there is any at all, except one with limited authority, and his name is not given. 4. Because it does not show who are the tenants of the freehold. Greene v. Greene, 7 Porter 19; Barney v. Frowner & Wife, 9 Ala. 901; Earle v. Juzan, 7 ib. 474; Rathburn v. Miller, 6 Johns. R. 281; In re Cooper, 15 ib. 533; Gillespie v. Somerville, 3

S. & P. 447; 3 Porter 362; Stephens' Pleading 10; Park on Dower, marg. 283, (11 Law Lib.)

II. The court erred in sustaining the demurrer to the first plea of defendant Raiford. This plea, as well as the one following, shows that Raiford was acting under the order of the Probate Court. Will a court allow its own officer, who is discharging a duty imposed on him by the court, to be sued, and its own decree thus nullified? The estate was in the custody of the law, and the plaintiff could not sue the officer who held it. 7 Ala. 53.

III. The court erred in sustaining the demurrer to the second plea in abatement of defendant Raiford. Greene v. Greene, 7 Porter 19; Barney v. Frowner & Wife, 9 Ala. 901; 12 ib. 836; Clay's Digest 173 § § 5, 6; ib. 222 § 8; Williams on Executors 366.

IV. The court erred in sustaining the demurrer to the third plea in abatement, that of Mrs. Martin.

V. The court erred in sustaining the demurrer to defendants' pleas in bar, numbered from three to fifteen. The third, fourth and fifth pleas set up the will of said Martin as a defence to the suit. The will clearly shows that the title to the lands in which dower is sought was not in the defendants to the suit; in other words, these pleas show title in third persons, which defendants may always set up in real actions. The sixth plea sets forth and relies upon the fact that plaintiff was a married woman when she attempted to marry the testator, having previously married David Todd, who was alive at the time of her supposed marriage with testator. This being admitted by the demurrer, was a complete bar to the action, because the second marriage was void. The other matters alleged in said plea can in no way affect this position. The seventh and eighth pleas question the regularity of the proceedings. The tenth shows that the estate was not ready for settlement, and is good. Greene v. Greene, 7 Porter 19. The eleventh, twelfth, thirteenth and fourteenth raise the question of estoppel, on which the following authorities are cited: 1 Green. Ev. § § 20, 27; 2 Stark. Ev. 31–2; 1 Cowper 232; 1 Campbell 245; 5 Pick. 193; 17 Vermont 449; 8 Shep. 130; 4 Pick. 220; 3 Strobh. Law 367; 17 S. & R. 364; 16 Ala. 167; 18 ib. 514; 19 ib. 436. Estoppel

of husband is also estoppel of wife. 1 Dev. 208; 2 ib. 174. The law of estoppel operates against femes covert and infants. 1 Story's Eq. § § 384, 385; 8 B. Monroe 539; 10 S. & M. 486; 2 Sugden on Vendors, marg. 262; 2 Richardson's Eq. 120. Estoppel *in pais* need not be pleaded, but may be given in evidence before the jury, and then it is the duty of the court to charge the law thereon. 3 Har. 90; 17 Vermont 455.

If the court should hold that the petition is defective, and that the demurrer to it should have been sustained, then it is submitted that the case should not be remanded, but that the petition should be here dimissed. The Probate Court being a court of law, and of course governed by legal rules in its proceedings, cannot allow amendments by making new parties. None of the necessary parties here are before the court; and at the time the petition was filed, there was no personal representative appointed.

A. B. MOORE, for the defendant:

1. The petition for dower sets up everything necessary. Clay's Digest 173 § 5; Greene v. Greene, 7 Porter 19.

2. A formal dissent from the will was not necessary, as it made no provision for the petitioner. But if necessary, the application for dower was a sufficient dissent. 7 Porter, *supra*.

3. The demurrer to Raiford's pleas was properly sustained. He was the administrator for the time, and was in possession of the property, and was entitled to notice. He could then make himself a party or not. 7 Porter, *supra;* Clay's Dig. 173 § 6.

4. It was not necessary to wait until the contest about the will was determined, as the widow is equally entitled to dower, whether the will be established or not.

5. The demurrer to Mrs. Mary Martin's plea was properly sustained; she was the executor named in the will, and was interested as a devisee under the will. The notice was given as the statute directs in such case. Clay's Dig. 173 § 6.

6. That the demurrer to all the pleas in bar, except those numbered 1, 1½, 2 and 15, should have been sustained, is evident from the face of the pleas themselves. The only

question to be tried was, whether the applicant for dower was the testator's widow or not. Any plea tendering another issue was improper.

7. The only testimony admitted, about which there can be any question, was the transcript from Georgia of the bond for a marriage license. If this was improperly admitted, still it was error without injury, which will not reverse; the other proof of the marriage was ample. Marriage may be proved by cohabitation and reputation. Ford v. Ford, 4 Ala. 145; 1 Green. Ev. 107; 5 Phil. Ev. C. & H.'s Notes 286.

8. David Todd having a wife living when he contracted his supposed marriage with demandant Betsey, that marriage was void, and afforded no obstacle to her subsequent marriage with the testator Martin. 2 Kent 96. The marriage between said Betsey and testator was legal, in good faith, and binding on the parties themselves and all claiming under them. But, if it were void for fraud, the Court of Probate could not set it aside: a court of chancery only could do so. 2 Kent 76.

9. The demandant is not barred of her dower by the deed of separation between her and testator. At common law, there could be no collateral satisfaction in bar of dower, and our statutes have made no change in this respect. No agreement made between husband and wife during coverture can bar her right to dower, if she survive him. 2 Ala. 83; 16 ib. 636; 4 ib. 557; 3 Bacon's Abr. 220; Co. Lit. 36 b.; 4 Coke 1; 2 Bouv. Ins. 248; 7 Mass. 155; 4 Kent 54 to 57; 1 Smith's Leading Cases 360; Sel. N. P. 221.

10. The Probate Court cannot investigate the question, whether the lands in which dower is claimed were purchased by the testator with money belonging to Mary Martin. If she has a lien on the lands, because they were entered with her money, it is purely equitable, and she must go into a court of equity to enforce it. If the testator died seized and possessed of these lands, and the demandant is his widow, then she is entitled to dower in them.

NOTE.—Many other points, upon questions of evidence and the charges of the courts, are argued in the briefs; but it is not deemed necessary to insert these portions of the

briefs, as the opinion of the court does not decide any of the questions therein discussed.

CHILTON, J.—The first question presented for consideration is, should the demurrer to the petition have been overruled. Several objections have been taken to it by the counsel for the plaintiffs in error, as: First, it does not state whether the alleged husband of the demandant died testate or intestate, and consequently it is impossible to determine from the petition itself whether devisees or the heirs at law are the proper persons to be made parties; Second, it does not aver that the children named in the petition as the " only legitimate children of the deceased," are the heirs at law, or the devisees of the deceased; Third, it fails to show that there is any executor or administrator upon the estate, except that there is an administrator with limited authority, and fails to state who he is; And fourth, fails to show who are the tenants of the freehold.

By the third section of the act of 1826 (Clay's Digest 173, § 5,) it is provided " that it shall be lawful for any widow, claiming dower, to file her petition in the Circuit or County Court, in the county where her husband shall have usually dwelt next before his death, setting forth the nature of her claim, and particularly specifying the lands, tenements and hereditaments, of which she claims dower, and praying that her dower may be allotted to her; whereupon the said court shall issue their writ to the sheriff, commanding him to summon five discreet freeholders as commissioners, connected with the parties neither by consanguinity nor affinity, and entirely disinterested, who, upon oath, (which oath the sheriff is hereby authorized to administer) shall allot, and set off by metes and bounds to the said widow, one third part according to quantity and quality of all the lands, tenements and hereditaments in said county, and shall put her in possession of the same, which possession shall vest in her an estate for her natural life; and where she has claim to dower in lands lying in different counties, she may proceed in the Circuit or County Court where such lands may lie, and make recovery in manner as is hereby directed; and the sheriff and commissioners shall, also, at the same time, allot and set off to such

widow her portion of the personal estate, of which her husband died possessed, and to which by this law she shall be entitled, which part or portion shall be and enure to such widow, her heirs, executors, administrators and assigns forever."

The succeeding section provides, that "the proceedings upon such petition for dower, shall be in a summary way, and the court shall, at the first term when such petition is filed, proceed to hear and determine as to them shall seem just and right; *Provided*, That the party petitioning for dower shall give ten days' previous notice to the executors or administrators, by serving them with a copy of said petition; and where there are no executors or administrators, or where they do not reside in the county of the residence of such widow, or where the widow shall be the executrix or administratrix, then she shall give the said notice in one of the newspapers published in this State nearest to the residence of such widow, by advertising the same four times in succession."

In the case of the Executors of Greene v. Greene, 7 Por. Rep. 19, the provisions of this statute above cited underwent an examination by this court, and a construction was then given to it with which we are entirely satisfied, and to which we feel bound to adhere. This court held "that in all cases it is necessary, either in the petition, or by suggestion to the court, for the petitioner to state *who are the heirs* and tenants of the freehold; and to avoid delay, she may give them notice to appear at the court to which the application is made, to controvert her claim. If they appear and plead, an issue may be made up, &c., or they may demur to the petition; for it is necessary that the petition should set forth with reasonable precision the facts on which her claim to dower rests, so as to make out a *prima facie* case.

The same doctrine was substantially affirmed in Earle v. Juzan, 7 Ala. Rep. 474; and in Barney v. Frowner & Wife, 9 ib. 901–3, it was said: "The petition does not show whether there is any personal representative of the estate or not." It did not appear that one of the heirs was notified. As to a necessary party who had died (Margaret Johnson) no steps had been trken but merely to suggest her death. Nor did it appear that all the *terre tenants* were regularly before the

court, as was decided in Greene v. Greene, *supra.* For these reasons, the judgment of allotment of dower was reversed.

We think these citations very conclusively establish the insufficiency of the petition in the case before us. The remedy given by the statute is a summary one, in derogation of the common law, and a special limited jurisdiction is created in the Probate Court, to avoid the delay consequent upon the common law proceeding. The party petitioning must therefore conform to the statute in every essential particular. We would say then, she must show by her petition the essential elements which constitute the title to dower, *marriage, seizin* of the husband during the coverture, *and his death.* She must farther particularly describe the lands in which she claims dower. In order also to confer jurisdiction upon the Court of Probate, she should aver that the lands were situated in the county in which she filed her petition. (See — Ala. Rep. ——.) In order also to enable the court to ascertain whether she should not be put to her election, as between her claim for dower and the provision made for her in the will of her late husband, and as necessary to enable the court to determine as to whom notice should be given to come in and contest as parties, she should show whether her husband died testate or intestate, and who are his personal representatives, if any there be. She must show who are the heirs and tenants of the freehold; and the record should show that the necessary parties are before the court, otherwise its sentence would not be definitive, and the sheriff might be required by the mandate of the court to turn a party out of possession of his freehold, whose first notice of the proceeding by which he is to be ousted is the visit of that officer.

The petition before us is defective in several of these essential requisites. The marriage is only to be arrived at by inference from the averment that demandant is the *widow,* a mode of pleading not to be encouraged. It is not said the lands lie in Perry county, in which the petition is filed, but that the deceased *died* in said county, seized and possessed (they may have been in another county) of the following lands, &c. Upon whom did the seizin of the ancestor devolve upon his death? Upon his heirs at law, if not otherwise

provided by deed or will. But who are his heirs? The petition does not inform us. It says, certain persons who are named, "are his only legitimate children." There may have been others who "are not," but having died, may have left children who would also be heirs, although they would not be, in common parlance, the children of the decedent; so that we must arrive at the heirs, from the averment that the persons named are the only legitimate children, and thus be compelled to resort to inference in order to aid the pleader. Another and more palpable omission is, the failure to show that there is any personal representative upon the estate. The petition avers that the deceased has much personal property in the county, a list of which, as petitioner has been informed, has been returned to the court by the administrator with limited authority appointed by said court. Who was this administrator, and to what did his authority extend? If he were a mere temporary administrator, to take care of the estate pending some controversy as to who should be administrator-in-chief, or executor under a contested will, or an administrator *ad colligendum*, it is clear he is not the officer whose duty it is to make distribution to the widow, nor the administrator contemplated by the fourth section of the act of 1826 as entitled to notice. We are therefore of opinion that the petition is defective, and that the demurrer to it should have been sustained.

We might here close this opinion; but as the case would doubtless return upon us, it is proper that we express our views upon the merits of the controversy, which may be done in few words.

And first we may premise, that the Probate Court proceeds according to the rules of law, in the exercise of its summary jurisdiction over the subject of dower, and has no equity jurisdiction; so that if the demandant has a legal right to dower, it is the duty of the court to allot it, irrespective of considerations which are purely of equitable cognizance.

The proceedings are drawn out to a most unnecessary length, and as upon a subsequent trial they will doubtless be modified, it is unnecessary that we go into an examination of the numerous points raised upon them, as it would serve rather to confuse than to assist the primary court in arriving at a correct result upon the real merits of the controversy.

The questions which appear to be involved in the record, and a decision of which at this time is deemed necessary as a guide in the future conduct of the cause in the court below, may be thus stated: First, was the marriage between the demandant and the deceased, lawful? Second, if lawful, was the husband, during the coverture, seized of such an estate in the lands of which dower is claimed, as entitles demandant to dower? And third, conceding the marriage and the seizin of the husband as established, has the demandant released, forfeited, or in any manner barred her right to dower?

And first, as to the marriage: Though a man marries never so often, he can have but one lawful wife living. So long as she is living, and the marriage bond remains in full force, all his subsequent marriages, whether meretricious, or founded in mistake and at the time supposed to be lawful, are utterly null and void. No decree of divorce is necessary to annul such subsequent marriage, for it never had any legal existence. Such was clearly the common law. In Riddlesden v. Wogan, Cro. Eliz 857, the plaintiff declared in debt on a bond. Defendant pleaded that she was, at the time of its execution, the wife of one Inglebert, who was then in life, *et sic non est factum.* Plaintiff replied that, after the bond was made, the defendant was divorced from said Inglebert by decree of the spiritual court, by reason of his having another wife living at the same time of his marriage with defendant, and averred that such former wife was then living. To this replication there was a demurrer, but it was adjudged good by the court, because the decree of divorce was but declaratory. "The subsequent marriage was merely void, and needed not any such sentence of divorce. It was void *ab initio,* and so she was always sole."

So also in Pride v. The Earls of Bath and Montague, Salkeld 120, which was ejectment by Pride as heir to the Duke of Albemarle, proving himself the son of one who was brother to the Duke, who died without issue. But the defendants proved that the Duke had a son, Christopher, who conveyed to them. Plaintiff then gave evidence that, at the time the Duke married Christopher's mother, she had another husband living, and who was then living. To this it was objected that, since the Duke and this woman lived together

as man and wife, and were both dead, the plaintiff could not be permitted to bastardize the issue, who was dead also, and who during his whole life had been taken and reputed to be the legitimate son of the Duke and so styled by him in his deed of settlement, and also in his last will and testament. But the objection was overruled, and the court said: "If H. marries a woman, and that woman marries again, living H. the last marriage is void without any divorce. The spiritual courts only interfere in such cases *pro salute animæ*. "No person," says Judge Kent, "can marry while the former husband or wife is living. Such marriage is, by the common law, absolutely null and void." 2 Com. 79. The prior marriage renders the parties incapable of contracting at all; "and if any persons under this legal incapacity," says Mr. Shelford, "come together, the union is meretricious, and not a matrimonial union; and therefore no sentence of avoidance is necessary." Shelford on Divorce, &c., 480; 2 Phill. R., 19.

Such being the settled law, it follows that if, at the time of the marriage between the demandant and David Todd, said David had a lawful wife living, his marriage with the demandant was absolutely null and void, and imposed no obstacle to her marriage subsequently with the deceased. Nor does it in any way affect the rights of the parties to this controversy, that the said Betsey knew at the time she married Todd that he had a former wife then living. We know of no principle which bars a woman of divorce because she has indulged a meretricious union anterior to her marriage.

As to the proof of marriage between Todd and Asa Rebecca McCulloch, it is only necessary that it should be such as to satisfy the jury that such marriage actually did take place. Proof by an eye witness is not required, nor is it indispensable that the license with the minister's return endorsed thereon should be produced. It was said by Lord Mansfield in Morris v. Miller, 4 Bur. 2057, and afterwards repeated by him in Birt v. Barlow, Doug. 171, that "an action for criminal conversation was the only civil action where it is necessary to prove an actual marriage. In other cases, cohabitation, reputation, &c., are sufficient." See to the same point Ford v. Ford, 4 Ala. Rep. 145; 2 Starkie's Ev. 6 Ed. marg. p. 251,

and Forney v. Hallacher, 8 Ser. & R. 159; Phil. Ev. (C. and H. Notes,) vol. 3, p. 1147. The bond given by David Todd and Samuel McCullough, preparatory to obtaining license, is relevant and legal proof, but was improperly admitted on the trial in this case, because the certificates were insufficient. It does not purport to be a record, and no law was introduced showing that by the laws of Georgia it was required to be recorded. This is necessary. Mitchell v. Mitchell, 3 Stew. & Por. 81; White v. Strother, 11 Ala. Rep. 723. When this proof is made, the act of Congress of 1804 (see Clay's Dig. 619) prescribes the manner of authenticating the exemplification of it.

As respects the question attempted to be raised by the pleading, that the lands were purchased by the decedent with money which he obtained from Mary Martin, one of the defendants, it is only necessary to observe, that the Probate Court is incompetent, for want of jurisdiction, to go into such an inquiry. Whether a court of equity would decree a lien to take precedence of the claim for dower, is not a question now before us, and we therefore intimate no opinion upon it. It is very clear the Probate Court cannot entertain jurisdiction of such an inquiry.

If, upon a subsequent trial, the jury should find that, at the time of the demandant's marriage with Todd, he had a lawful wife living, this would render her a *feme sole* when she afterwards married with the deceased, and incapacitate him from entering into a valid marriage with the defendant Mary; for the deceased would then have occupied a position precisely similar to Todd, having a lawful wife living. This marriage with Mary Campbell, as the defendant was called, would in such case be null and void, and this consequence would follow, however innocently the parties may have entered into the relation.

The only remaining question is, has the demandant released, forfeited, or in any manner barred her right to dower. Premising that what we say upon this subject must be considered as applicable to the case in the common law forum, and without any intimation as to whether a remedy exists elsewhere, we are quite sure that the agreement said to have been entered into between Shadrach Martin and the demandant,

cannot be looked to as creating any bar or impediment to a recovery of dower. If the husband by jointure after marriage make a competent livelihood of freehold for the wife, of lands and tenements, to take effect presently, in possession or profit, after the decease of the husband, and to continue for the wife's life, even this shall not bar her dower, unless she elects to accept it in lieu of dower after her husband's decease ; for she is not capable of consenting to such provision during coverture. Stephens' Com. vol. 1, p. 256. Much less would the inadequate provision made by the parties in this case to continue two years, and entered into during their marriage, have the effect of barring the wife's right. It is well settled law, that a release of dower from the wife to the husband either before or during the coverture is void. Rowe v. Hamilton, 3 Greenl. Rep. 63; Hastings v. Dickerson, 7 Mass. Rep. 155; Bouv. Inst. vol. 2, p. 248; Gould v. Womack, 2 Ala. Rep. 83; Blackman v. Blackman, 16 ib. 633.

In respect to the dissent by the widow to the husband's will: It was settled in Greene v. Greene, *supra*, that where no provision was made for her by the will, she may claim dower without any express dissent. She cannot be put to an election, unless there be alternatives as to which she may exercise a choice.

The question as to fraud on the part of the demandant in failing to communicate to the deceased, at the time of her marriage with him, a correct knowledge of her condition, is a matter which the Probate Court cannot try. If there was a marriage between parties capable of entering into that relation, and the marriage has never been legally dissolved, it is sufficient upon this application, however the husband may have been decieved in respect to the former conduct or condition of his wife. And as we have seen that she could not, during the coverture, bar her right to dower by any agreement entered into with her husband, it would follow that, in a court of law, she would not be estopped by any recognition of his right to marry another woman, or of the validity of such subsequent union. The relation of marriage once established, the wife during its continuance is regarded as *sub potestate viri*, and her inchoate right to dower attaches, which can only be barred or defeated by some of the modes pointed

out by the common law, or recognized by the State. The record before us, if the marriage is found to be valid, presents no legal impediment to the demandant's right to dower.

The authorities cited by the counsel for the plaintiff in error, showing that these are cases where the wife shall be estopped from denying the marriage, doubtless are correct, but they have no application to cases like the present, where the claim is for dower. Where the subject matter of the litigation arises out of a contract either express or implied, it may be granted that a married woman may be estopped, like other parties, by acts or declarations upon which others have been induced to act, and against the truth of which it would work fraud and injustice for her to aver; but this doctrine can have no application to dower, which does not arise out of, nor is dependent upon any contract. On the contrary, "it is an estate which arises solely by operation of law, and not by force of any contract, express or implied, between the parties. It is the silent effect of the relation entered into by them; not as in itself incidental to the marriage relation, or as implied by the marriage contract, but merely as that contract calls into operation the positive institution of the municipal law." Park on Dower, 5. It has for its object the sustenance of the widow and the nurture and education of her children, if she have any, and is favored in law. Indeed, such was the favor with which it was regarded by the ancient common law, that it grew into a maxim, "that the law favoreth three things: 1. Life; 2. Liberty; 3. Dower." Cro. Jac. 111; 9 Co. 170; Park on Dower, 2 notes.

Dower being an institution of positive law, can only be defeated or barred by some of the modes pointed out by the law.

We are asked to render judgment in this court dismissing the petition; but we are of opinion the petition can be amended, and the proper parties made. The fact that there was no such administrator as contemplated by the statute to be made a party to the petition when it was filed, did not prevent the widow from proceeding under the statute by publication, and the subsequent appointment of a representative of the estate relates to the death of the testator, and

she may be brought in and made a party, as well as the other persons in interest.

Let the decree be reversed and the cause remanded.