CARLISLE *vs.* TUTTLE and WIFE.

[PROCEEDING BEFORE PROBATE COURT FOR REMOVAL OF WARD'S PROPERTY TO ANOTHER STATE.]

1. *Amendment of petition.*—A petition for the removal of an infant's property to another State, (Code, §§ 2032–34,) may be amended, after demurrer sustained to the original, by the addition of necessary parties and allegations.

2. *Parties defendant to petition.*—The resident guardian, whether he has any of the property in his possession or not, is a proper party defendant to such proceeding; and when the property sought to be removed is in the hands of an administrator, he and the resident guardian may be joined as defendants.

3. *Parties plaintiff.*—The proceedings should be instituted in the name of the non-resident guardian, and not of the ward by his guardian; and where the guardian is a married woman, her husband should be joined with her.

4. *Sufficiency of petition.*—An averment in such petition, that the ward is the son and infant child of the wife, is sufficient to show that she is its natural mother.

5. *Mother's right to change domicile of infant child.*—After the death of the father, the mother has a right, during her widowhood, to change the domicile of a child under the age of seven years, who has no guardian ; there not appearing any fraudulent design to alter the succession upon his death.

6. *Marriage of feme guardian.*—The marriage of a woman, after her appointment and qualification as guardian, although it might authorize proceedings for her removal, does not terminate her guardianship, but has the effect of joining her husband with her.

7. *What constitutes non-residence of guardian and ward.*—If the mother of an infant, after its father's death, carries it with her to another State, before a guardian is here appointed for it ; and, after she and the child have acquired a domicile in such foreign State, she is there appointed its guardian, she may here institute proceedings for the removal of its property to that State.

8. *Notice of taking deposition.*—Ten days is a sufficient notice, as prescribed by the order of a probate judge, for the taking of a deposition at a place 1500 miles distant from the court, when it is shown that the distance can be traveled in six days.

9. *Error without injury in admission of evidence.*—The erroneous admission of evidence by the probate court is not a reversible error, where the bill of exceptions, setting out all the evidence, shows enough to sustain the decree of the court.

10. *Authentication and contents of foreign record.*—A guardian's bond is not, *prima facie*, matter of record, and cannot, in the absence of statutory provisions, be certified under the act of congress of 1790 ; if a certified copy of it is admissible at all, the certificates must conform to the requirements of the act of 1804.

11. *Foreign guardian must set out bond.*—The transcript which a foreign guardian, making application for the removal of his ward's property, is required (Code, § 2033) to produce, must not only show that he has given bond, with security, for the performance of his trust, but must set out a copy of it, in order that the court authorizing the removal may see that it is sufficient to protect the ward's estate. (WALKER, J., *dissenting*.)

12. *What property may be removed.*—An infant's distributive share of an unsettled estate, in the hands of an administrator, cannot be made the ground of an application for its removal to another State, until after the rendition of a final decree against the administrator. (WALKER, J., *dissenting*.)

APPEAL from the Probate Court of Perry.

THE original petition in this case was filed by Samuel B. Tuttle and Lucretia, his wife, to obtain an order for the removal of the property of Elihu Carlisle, a minor child of Elihu Carlisle, deceased, to the State of Connecticut. It alleged, that Mrs. Tuttle, who was the widow of said Elihu Carlisle, deceased, was appointed guardian of said minor on the 10th August, 1854, while she was sole and unmarried, and duly qualified as such guardian according to the laws of Connecticut; that she and her

Carlisle v. Tuttle and Wife.

said husband are resident citizens of the district of Litch-
field, in the State of Connecticut; that Edward K. Car-
lisle has been appointed guardian of said minor by said
probate court of Perry county, Alabama; that said minor
is entitled to property in said county of Perry, consisting
of money and choses in action, "which, as petitioners are
advised and believe, can be removed to said district of
Litchfield, Connecticut, the residence of petitioners and
said ward." The prayer of the petitioners was for an
order granting leave to remove the property of said minor
to Connecticut. No person was made a formal defendant
to the petition.

A demurrer was sustained to this petition, and leave
granted to amend it; and an amended petition was then
filed, containing the following averments: That said
Lucretia intermarried with said Elihu Carlisle, since de-
ceased, in 1851, in Perry county, Alabama; that said
Elihu Carlisle afterwards, during the year 1851, died in
said county, possessed of a considerable real and personal
estate, and leaving as his heirs-at-law his widow, said
Lucretia, and an only child, an infant of tender years,
called Elihu; that letters of administration on the estate
of said decedent were granted by said probate court of
Perry, on the 15th September, 1851, to Robert C. Carlisle,
who thereupon possessed himself of said estate, and un-
dertook the burden of the administration; that said Lu-
cretia, with her infant child, in 1852, removed to Litch-
field district, Connecticut, and there acquired a domicile;
that on the 10th August, 1854, she was duly appointed,
by the probate court of said district of Litchfield, guardi-
an of her said infant child, who was then about seven
years of age; that she duly qualified as such guardian,
and gave bond, with security, for the performance of the
trust, according to the laws of Connecticut; that she af-
terwards intermarried with Samuel B. Tuttle, her present
husband, and since that time, with his consent and ap-
probation, has continued her guardianship of said infant;
that on the 9th October, 1854, Edward K. Carlisle was
appointed, by said probate court of Perry, guardian of
said infant, and now claims to be its lawful guardian;

that on the 12th March, 1855, said Robert C. Carlisle made a settlement of his administration on the estate of said Elihu Carlisle, deceased, and a decree was then rendered against him, in favor of said infant, for $8,738 17, being a part only of said infant's distributive share of said estate; that the money due upon this decree is in the possession of either said Robert C. Carlisle or said Edward K. Carlisle, who are acting in concert to prevent its removal from this State; and that the money due upon said decree, together with the other property to which said infant is entitled in said county of Perry, consisting partly of his distributive share of said estate, can be removed to the State of Connecticut, without conflicting with any restriction or limitation thereon, or impairing the rights of said infant. The prayer of the petition was, that Edward K. Carlisle, guardian as aforesaid, and Robert C. Carlisle, administrator as aforesaid, might be made defendants to the application; and for an order of removal of the property.

The defendants objected to answering or pleading to this petition, on the ground that it made a new and different case from the original petition; and their objection being overruled, they jointly demurred to the petition, on the following grounds: 1st, that the plaintiffs cannot join in said petition, on the facts therein stated, because it does not appear that said Samuel B. Tuttle is guardian of said minor; 2d, that it is not shown that said minor ever acquired a domicile in the State of Connecticut, and consequently said probate court of Litchfield district had no jurisdiction to appoint a guardian for him; 3d, that the petition does not show that said Lucretia is the natural mother of said infant; 4th, that the facts stated in the petition do not show that the probate court of Perry county has been ousted of its jurisdiction over the estate of said infant, or should be ousted of its jurisdiction by the proceedings had in said probate court of Litchfield district; 5th, that the petition does not show whether the money due on said decree is in the hands of Edward K. Carlisle, or of Robert C. Carlisle, and therefore the court cannot render a decree against either of them; 6th, that

Carlisle v. Tuttle and Wife.

the petitioners, on the facts stated in the petition, are not entitled to the relief prayed against the defendants; and, 7th, that the petition should have been filed in the name of the infant. A separate demurrer was filed by Edward K. Carlisle, on the grounds, 1st, that the petition did not allege that any money or property, belonging to said infant, ever came to his hands; 2d, that he ought not, on the facts stated in the petition, to have been made a defendant thereto; and, 3d, that he ought not to have been made a defendant jointly with said R. C. Carlisle. The court overruled each of the demurrers; and exceptions were reserved by the defendants, both to the overruling of their demurrers, and to the overruling of their objection to the amended petition.

Before proceeding to a hearing of the petition on the merits, the defendants moved to supress the depositions of Joseph J. Gaylord and Mrs. Caroline Norton, and reserved exceptions to the overruling of their motions. The questions involved in these motions require no particular notice of the facts connected with them. Several motions were also made to exclude specific portions of these depositions, none of which require special notice.

On the hearing of the petition, the plaintiffs read in evidence the depositions of Gaylord and Mrs. Norton, who proved the material allegations of the petition, respecting Mrs. Tuttle's marriage with Elihu Carlisle, deceased, her subsequent removal to Litchfield district, Connecticut, with her infant child, her marriage with Samuel B. Tuttle, and their continued residence in Litchfield. They then offered in evidence "a paper of which the following is a copy:"

"At a probate court holden at Litchfield, within the district of Litchfield, on the 10th day of August, 1854; present Charles Adams, judge. Elihu Carlisle, of Goshen in said district, a minor about seven years of age, and not having any father or guardian in this State; this court doth, therefore, appoint Lucretia C. N. Carlisle, the mother of said minor, of said Goshen, guardian of said minor's person and property. And the said Lucretia appeared in court, accepted said trust, and gave bond, with

security, conditioned that the said guardian shall faithfully perform the duties of said trust; which said bond was accepted by this court, and ordered to be kept on file." Two bonds are then set out in the paper, or transcript, each dated August 10, 1854, and conditioned for Mrs. Carlisle's faithful discharge of the duties of said guardianship; but differing in amount, and in the names of the sureties. To the paper the following certificates are annexed:

"State of Connecticut, ⎱ Probate Office,
District of Litchfield. ⎰ October 26th, 1855.

I, Payne K. Kilbourne, clerk of the probate court within and for the district of Litchfield in the State of Connecticut, and keeper of the records and seal thereof, do certify, that the foregoing, marked 'A,' is a true copy from the records of this court, and that the foregoing marked 'B' and 'C' are true copies of bonds on file in this office. In testimony whereof, I have hereunto set my hand, and affixed the seal of said court, at Litchfield, this 26th October, A. D. 1855."

     (signed)       "PAYNE K. KILBOURNE, Clerk."

"State of Connecticut, ⎱ Probate Office,
District of Litchfield. ⎰ October 26th, 1855.

I, Charles Adams, judge of the probate court for the district of Litchfield, State of Connecticut, do hereby certify, that Payne K. Kilbourne, whose name is above written and subscribed, is, and was at the date thereof, clerk of said court, duly appointed, commissioned and sworn, and keeper of the records and seal thereof; and that the above certificate, by him made, and his attestation of record thereof, is in due form of law. In testimony whereof, I have hereunto set my hand, this 26th day of October, A. D. 1855."

     (signed)       "CHARLES ADAMS, Judge."

"When this paper was offered in evidence, the defendants objected to its reception, on the following (with other) grounds: 1st, that it did not show any judicial proceedings of the probate court of Litchfield district, and

that the portion thereof which might have been so intended did not show that the same were proceedings of said court; 2d, that as there were two separate and distinct bonds shown in said supposed record, neither one of them could be read, because it was impossible for the court to determine which one was referred to in said supposed minutes of said probate court; 3d, that neither one of said bonds was part of the record of the said supposed proceedings of said probate court, and neither one could be read in evidence by virtue of the certificates thereto attached; 4th, that the certificate of Judge Adams, attached to said record, did not show that he was the officer authorized by law to made such certificate; 5th, that said record could not be received in evidence on the certificates attached. The court overruled said objections, and allowed said record to be read in evidence; and the defendants excepted.

"It was shown, also, that said Edward K. Carlisle had been appointed guardian of said minor, and Robert C. Carlisle administrator of said Elihu Carlisle, deceased; that said probate court of Perry had rendered a decree against said administrator, as alleged in said petition; that the amount of said decree, and the distributive share of said minor in his father's estate, were in the possession of said Robert C. Carlisle, administrator as aforesaid, and no portion thereof had passed into the possession of said Edward K. Carlisle, guardian; that a suit was pending in the circuit court of Perry county, in favor of one William Holman, against said administrator, for the value of certain slaves amounting to $3,500; and that the rate of interest in Connecticut was six per cent.

"This was all the evidence; and upon this evidence the court rendered a decree in accordance with prayer of the petition, to which the defendants excepted."

All the rulings of the court to which, as above stated, exceptions were reserved, are now assigned as error.

I. W. GARROTT, for the appellants.—1. The amended petition made an entirely new case, ending in the following legitimate result: E. K. Carlisle was sued simply as

guardian, without any reference whatever to the estate of the ward's father; while the suit terminated in a final decree against Robert C. Carlisle, as administrator of Elihu Carlisle, deceased.

2. The amended petition was demurrable, for the vagueness, uncertainty, and insufficiency of its allegations. From aught that appears in it, Mrs. Tuttle may have been the step-mother of the infant. The funds are alleged to be in the hands of Robert C. Carlisle *or* of Edward K. Carlisle.

3. The proceeding should have been in the name of the ward, by his guardian, and not in the name of the guardian.

4. The notice of taking the depositions of Gaylord and Mrs. Norton, at a place 1500 miles distant from the court, was not sufficient.

5. The paper purporting to be a transcript from the records of the probate court of Litchfield, Connecticut, was not such a record as comes within the provisions of the act of congress. The caption does not pretend to set forth facts appearing on the records of that court. It recites that certain facts occurred at the times therein stated; but whether such facts appear by the record, or exist only in the mind of the clerk, is not shown. Two bonds, bearing date on the same day, but for different amounts, and with different sureties, are copied in the transcript; but it is not shown which of the two was approved. These bonds are not records, or judicial proceedings of any court, within the meaning of the act of congress of 1790, under which the certificates were made. Martin v. Martin, 22 Ala. 103; Mitchell v. Mitchell, 3 Stew. & P. 81; White v. Strother, 11 Ala. 723. If these bonds are admissible at all, they must be certified under the act of congress of 1804.—Martin v. Martin, *supra.* The certificates do not comply with the requisitions of the act of 1804; nor was any Connecticut statute shown, requiring such papers to be kept in the office of the probate judge.—Woodley v. Findlay, 9 Ala. 720.

6. The marriage of Mrs. Tuttle, after her appointment as guardian, terminated her guardianship.—McPherson on Infants, 89; Jones v. Powell, 9 Beavan, 345; *In re*

Carlisle v. Tuttle and Wife.

Gornall, 1 Beavan, 347 ; 8 Simons, 471 ; 4 Com. Dig. 510.

7.. The jurisdiction of the probate court of Perry could not be ousted by the facts presented by the record.—Cook v. Wimberly, 24 Ala. 486.

W. M. BROOKS, *contra*.—1. No objection was made to the order granting leave to amend. The amendment was within the terms of the order, and was authorized by the statute.—Code, § 2403.

2. The amended petition was unobjectionable, in parties, prayer, and allegations.

3. The order of the probate judge, fixing the notice of the taking of depositions, is not revisable. If it be revisable, the notice required was sufficient.

4. If any error was committed in the admission of evidence which was objected to, it is not available to the appellants, since the record shows enough to sustain the decree.

5. The objections to the transcript were not well taken. Dozier v. Joyce, 8 Porter, 303.

6. On the death of the father, the mother has a right to change the domicile of an infant.—2 Kent's Com. 225, 234, and notes ; 5 Pick. 20 ; 1 Jarman on Wills, 11.

7. The mother having removed, with the infant, to Connecticut, and there acquired a domicile, and having been there appointed guardian, the probate court of Perry county had no jurisdiction to appoint another guardian. Code, §. 2012 ; Ware v. Coleman, 6 J. J. Mar. 199.

8. The marriage of a *feme* guardian neither determines her guardianship, nor transfers it to her husband ; whatever may be its effect in authorizing her removal.— 4 Com. Digest, 384 ; 9 Beavan, 345 ; 1 Beavan, 348 ; 13 Vesey, 517. Moreover, the question of the continuance of Mrs. Tuttle's guardianship pertains to the court which granted it, and is beyond the jurisdiction of the probate court of Perry.

WALKER, J.—The permission to file the amended petition was not erroneous. The amendment did not make a new case. It merely supplied the defects in the case

previously made, as to allegations and parties ; which may be done in the probate, as well as in the chancery court. Martin v. Martin, 22 Ala. 86.

The object of the petition was the removal of the infant's property to another State. The amended petition disclosed in what the property consisted, and that the administrator was interested in the proceeding, because he still had in his hands undistributed assets, which would be within the operation of the order sought by the petition. The making the administrator a party, upon this amendment, is sustained by its perfect analogy to the case of frequent occurrence and undisputed legality, where in the chancery court an amendment points out an interest in the subject-matter of the original bill in some new party, and makes him a defendant.

The administrator was interested in the proceeding, for the reason above stated. The guardian was interested, whether he had in his hands the money recovered in the decree against the administrator or not, because the success of the application would transfer to another his right to receive the property of the infant. The administrator and guardian, being both interested in the proceeding, were proper parties, and were properly joined as defendants. The Code (§ 2033) must not be understood, in prescribing notice to the "administrator *or* guardian," to prohibit the bringing of them *both* before the court, where they are *both* interested. The statute (Code, § 2033) makes the order, in which the successful prosecution of the application must terminate, an authority to the guardian to sue for and recover the property of the ward in his own name, for the use of the ward. The order has thus the effect of transferring to the non-resident guardian the right which before pertained to the resident guardian. To a proceeding, ending in such an order, the guardian was properly made a party, whether he had any of the property in his possession or not.

The following positions, in addition to those already incidentally passed upon, are taken in support of the demurrer to the petition : 1st, that the proceeding should have been in the name of the ward, by the guardian ;

2d, that the petition does not disclose with sufficient certainty that Mrs. Tuttle was the natural mother of the infant, and had a right to change the infant's domicile from this to another State; 3d, that Mrs. Tuttle's guardianship was terminated by her subsequent marriage; 4th, that the husband of Mrs. Tuttle was improperly joined with her as a petitioning party; 5th, that the jurisdiction of the Perry probate court over the matter of the guardianship could not be divested.

The first of those positions is met by the statute itself. Section 2032 of the Code authorizes, in certain prescribed contingencies, an order for the removal of the ward's property to the State of his residence, *"upon the application of the guardian."* The application here is by the guardian, and is therefore, in that respect, strictly conformable to the statute.

The original petition distinctly and repeatedly characterizes the ward as the son of Mrs. Tuttle, and the amended petition calls him her *"infant child."* It is thus shown with sufficient certainty that she is the natural mother of the infant. The language used is appropriate to the designation of her as the natural mother, and not the stepmother. This court does not decide, in Martin v. Martin, 22 Ala. 86, that the averment that the petitioner for dower is the *widow* of the deceased does not amount to a sufficient assertion of her marriage; but simply remarks, *arguendo,* that it "is a mode of pleading not to be encouraged." This will be seen by looking beyond the *head-note,* to the *opinion* itself.

Mrs. Tuttle, being the natural mother of the ward, had a right, after the death of the father, and during her widowhood, to change his domicile; he being at the time under the age of seven years, and there not appearing any fraudulent design to alter the succession upon the infant's death, and there being no guardianship in this State.— Potinger v. Wightman, 3 Merivale, 67; 1 Jarman on Wills, 10; Reeve's Domestic Relations, 298; Cumner Parish v. Milton Parish, 3 Salk. 259.

Mrs. Tuttle having been appointed guardian in Connecticut, when she was unmarried, her subsequent mar-

riage would not terminate her guardianship. Such marriage may have had the effect to authorize proceedings for her removal, and the appointment of a new guardian; but it would not, *ipso facto*, terminate the guardianship. If it be conceded that the husband's assent to the continuance of the guardianship was indispensable, such assent must be presumed in the absence of all evidence to the contrary.—White & Tudor's Lead. Cas. in Equity, 2 vol., 2d part, 146; 4 Com. Dig. 510, *Guardian*, *E*, 2; 1 Bright on H. & W. 17; Palmer v. Oakley, 2 Doug. 471; Adair v. Shaw, 1 Sch. & Lef. 243; Macpherson on Infants, 89, 111; Jones v. Powell, 9 Beavan, 345; *In re* Gornall, 1 Beavan, 347.; 4 Bacon's Abr. 554.

Upon the marriage of a *feme* guardian, her husband becomes guardian with her during the coverture. The effect of the marriage of an administratrix is to make the husband co-administrator with her.—Pistole v. Street, 5 Porter, 64; Kavanaugh v. Thompson, 16 Ala. 817; Williamson v. Hill, 6 Porter, 184. The same reasons exist for assigning to the husband, upon marriage, the attitude of an associate with his wife in her pre-existing guardianship, as in her pre-existing administration; and they should be allowed the same effect in both cases.

There is an authority, which holds, that the guardianship of a *feme sole* is not, upon her marriage, transferred to her husband.—2 Com. Digest, marg. page 384. This is not inconsistent with the proposition, that the husband is joined with the wife in the guardianship during the coverture. Such joinder of the husband with the wife in the guardianship does not involve the idea of a transfer of the guardianship from the latter to the former. In Osborne v. Carden, 1 Plowden, 292, it is said: "When the wife, being guardian, took husband, the husband had an interest in the wardship, in right of the wife; for the husband partakes with the wife in all her prerogatives; and therefore, when the wife had the wardship of the infant, and the husband had the wardship and direction of the wife, therein he had the wardship of all those things of which the wife had the wardship before; for the law does not deprive the husband of any interest, prerogative,

or thing which the wife had, but vests the interest in him with his wife, because they are but one in law." In Bacon's Abridgment, (*Guardian, F,*) we find the law thus stated : "If a *feme* guardian in socage marries, the husband becomes guardian in right of his wife; but if she dies, the guardianship ceases as to him, and shall go to the next of kin to the infant."

In all proceedings by the wife, who was guardian before coverture, the husband must be joined.—McGinty v. Mabry, 23 Ala. 672 ; 2 Bacon's Abr. 56, *Baron & Feme,* K. ; Byrne v. Van Hoesen, 6 Johns. 66.

Upon the marriage of Mrs. Carlisle with Tuttle, her husband became guardian with her; and this proceeding was, therefore, properly instituted by the two, and the decree was properly rendered in favor of the two, if the proceeding can be maintained as to other matters.

It is true that the statute requires the foreign guardian to produce a transcript, showing that he has been appointed guardian ; and the husband has not been, by name, appointed as guardian. But the appointment of a *feme sole* as guardian has the effect of making her subsequent husband joint guardian with her ; and the appointment of a *feme sole* is, in effect, the appointment of her subsequent husband to the office with his wife pending the coverture. Thus the petitioning parties here are not without the letter, as they certainly are within the spirit and meaning of the statute.

In the case of Cook v. Wimberly, 24 Ala. 486, this court sustained the probate court, in its refusal to order the removal of a ward's property to another State, when the guardianship had commenced in this State while the infant was a resident, and before such infant was carried into another State. The decision is placed upon the ground, that a pending guardianship could not be ousted by the removal of the ward, without the consent of the guardian, to another State. That decision has no application to this case. Before any guardianship commenced in this State, the mother of the infant carried him to another State ; and both the mother and child there acquired a domicile, and the former was appointed guar-

dian. A residence, acquired under such circumstances, constitutes the guardian and ward non-residents of this State, within the intent and meaning of the statute.

A motion was made for the appellants to suppress a deposition, upon the ground that the ten days notice, required by the judge of probate who issued the commission, and given by the appellees, was insufficient. It was shown to the court, in support of the motion, that the distance from the place where the cause was pending, to the place appointed for taking the deposition, was 1500 miles, and that the distance could be traveled in six days. Conceding that the decision of the officer who prescribes the period of notice is revisable, we cannot regard the notice as insufficient. It was four days longer than the time necessary to be consumed in the travel; and it must be permitted, in fixing the notice under the statute, to look at the accustomed mode of traveling, and the time which it would take, as well as to the condition of the party to be notified, and any other circumstances materially affecting the question.

I pass by, without noticing it, the separate objection to the deposition of Mrs. Caroline Norton, because she proves no material fact not proved by another witness, whose credibility is not assailed; and the whole evidence being set out in the bill of exceptions, we would not reverse for an error in the admission of the testimony, if there is enough without it to justify the decree of the court; and in this case, if the evidence authorized the decree with the deposition, it would without it. The separate parcels of the deposition objected to were not all necessary to the decree, and the decree may be sustained without their aid.

The record of the probate court for Litchfield District, Connecticut, shows that both the ward and the guardian were of that district. This, upon a reasonable interpretation, we think equivalent to saying that they resided in the district; and being residents of the district, it was within the jurisdiction of the court to appoint the guardian.

The transcript from the record of the probate court for

Litchfield, Connecticut, says, that the guardian's bond was accepted, and ordered to be filed. The clerk, in his certificate, certifies, that so much of the transcript as purports to be the order of the court is a true copy from the record, and that the transcripts of the bonds are correct copies of the bonds on file in the office. The bonds are not, *prima facie*, matters of record; and, in the absence of a statute showing that they are matters of record, cannot be certified under the act of Congress of 1790. If they can be given in evidence under a certificate at all, it must be under the act of Congress of 27th March, 1804. Martin v. Martin, 22 Ala. 102; Mitchell v. Mitchell, 3 Stewart & P. 81; White v. Strother, 11 Ala. 723. The certificates are not conformable to the act of 1804; and therefore the bonds were not admissible in evidence upon those certificates.

But the exclusion of the bonds as evidence would have had no effect upon the decision of the case. The decree must necessarily have been the same, if they had not been before the court. The statute (Code, § 2033) requires, that the guardian should produce to the court a transcript, showing, among other things, that the guardian had "given bond, with security, for the performance of his trust." It is the fact that a bond, with security, was given, and not the bond itself, which the statute requires should be shown. This requisition of the statute is filled by the transcript. It recites, that the guardian "appeared in court, accepted said trust, and gave bond, with security, with condition that the said guardian shall faithfully perform the duties of said trust; which said bond was accepted by this court, and ordered to be kept on file."—Cunningham v. Slaughter, 24 Ala. 260.

The argument, that a non-resident guardian might obtain an order for the removal of the ward's property upon an insufficient bond, unless the bond is required to be shown to the court, and to be for an adequate amount, might be well addressed to the legislature, as a reason for an amendment of the law; but cannot justify a judicial tribunal, in departing from the plain letter and import of the statute as it stands. The requisition of the law is

filled, when the record shows "that bond, with security, for the performance of the trust," has been given and accepted by the court in which the guardianship is pending; and a court has no right to add to the conditions which the legislature has prescribed.

There was no decree for costs. The petitioners should pay the costs of the application, and the decree of the probate court should have been rendered against them for the costs. But the error of the court below, in this respect, may be amended in this court.

In my opinion, the decree of the probate court ought to be reversed, and a decree here rendered, corresponding in all respects with the decree of the court below, except that the petitioners should be adjudged to pay the costs.

My brethren place the reversal of this case, upon the ground, first taken in the case of Lary v. Craig, that it does not appear that "the ward is entitled to property in this State," as they think it is contemplated in section 2032 it should appear. As to this point, I deem it my duty to dissent from their opinion, and to state the grounds of my dissent. My brethren think, that the right of an infant to a distributive share of an estate, upon which administration is pending, is not the sort of title to property, which the law requires should exist when the order for removal is made. That a distributive share in an administered estate is property, and the right to it a title to property, cannot be denied. Such an interest may be subjected to the payment of debts, and is susceptible of an assignment which will be upheld in equity. The fact that it is a chose in action is no objection, because the statute (§ 2033) expressly provides, that the order shall be an authority to the guardian to sue for and recover the property in his own name, for the use of the ward. If it be held, that there must be a final settlement of the administration, and a final decree against the administrator, in favor of the ward, before the contingency has happened in which an order for the removal of the property can be made, the authority given "to sue for and recover" the property is useless; because the suit must terminate, and there must remain nothing to be done,

save the issue of execution, before the order could be made. The object of the statute was, to throw around the rights of the infant the protection of a guardian appointed at his residence, in the litigation necessary to recover his property. That object is totally defeated, if it be required that the litigation shall be had, and shall end in a final decree, before the guardian is invested with the authority to sue.

From the language of the statute ("where the ward is *entitled* to property in this State,") I draw a different conclusion from that which has been expressed by my brethren in the case of Lary v. Craig. I understand that the ward may *"be entitled to* property" which is adversely held, and his right to which is reduced to a mere chose in action. One who has a right to a distributive share of an estate, upon which there is a pending administration, is entitled to property. His right is neither contingent, nor prospective : it is subsisting. The ascertainment of the value or amount of the interest may have to await the settlement of the administration; but the right to the distributive share, which is the chose in action constituting the property, is in actual existence.

Section 2034 says, that the order for the removal of the property is a discharge of the executor, administrator, or other person in whose possession such property may be." This section should not, in my opinion, receive such a construction as would make the order a discharge of the administrator or executor from the duties of his office. Suppose an executor should be charged with the execution of trusts to continue for twenty years, and yet the immediate payment of a specific legacy to a non-resident infant should be directed by the will, there being no debts against the estate; could it be reasonably contended, that the probate court would have to withhold an order for the removal of the ward's legacy, which the executor might be willing and ready to pay, during the entire continuance of the trust, in order to avoid the discharge of an executor from his office. I cannot adopt that construction of the statute, which, I think, would lead to such a result. The statute means, in my opinion, nothing more

than that the order shall discharge the administrator, executor, or other person in whose possession the property may be, from liability to any other person, if he pays over or delivers to the non-resident guardian. The order is made a discharge, not merely to an executor or administrator, but also to any other person in whose possession the property may be. The word *discharge* is certainly not susceptible of any other meaning, than that which I have attributed to it, when used in reference to persons other than executors or administrators. It can only mean, in reference to persons holding no fiduciary relation, that they are discharged from liability to others, and authorized to pay or deliver to the non-resident guardian. The word must have the same signification in reference to executors and administrators. It would be a perversion of the statute to vary its signification with the change of persons upon whom it is to operate.

In this case, there had actually been, before the filing of the petition, a partial settlement, and a decree in favor of the ward, for a specific sum of money, against the administrator. My brethren think, that the non-resident guardian should not be permitted to take the sum so decreed to his ward, until there was a final settlement. If the decree had been in favor of an adult, he might have at once sued out an execution, and collected the money from the administrator. The right of the ward is certainly not less because of his infancy. The ward not only has property in this State, but his right is established by a solemn decree of a court of record. It seems to me that, to deny the application of the statute to such a case, is tantamount to an abrogation of it.

My opinion as to the necessity of showing the bond given by the non-resident guardian, and as to the existence of a title to property which authorizes the proceeding, differs from that of the majority of the court in Lary v. Craig; and, therefore, is not the opinion of the court. According to the opinion of the majority of the court, the decree of the court below is reversed, and the cause remanded.

STONE, J.—The majority of this court re-affirm the principles settled in the case of Lary v. Craig, at the present term ; and to that extent, we differ from the opinion pronounced by Judge Walker. In other respects, we concur with him.

The judgment is reversed, and the cause remanded.

[PROCEEDING BEFORE PROBATE COURT FOR REMOVAL OF WARD'S PROPERTY TO ANOTHER STATE.]

