## GUNN *vs.* HOWELL.

[ASSUMPSIT FOR MONEY HAD AND RECEIVED—PLEA OF PAYMENT UNDER FOREIGN JUDGMENT AND GARNISHMENT.]

1. *Exemplification of foreign record.*—A certificate by the clerk of a foreign court, appended to a transcript from the records of his court, and accompanied by the certificate of the presiding judge in proper form, stating that the annexed transcript "contains a true, correct, full and complete exemplification of all the pleadings, orders, rulings, entries, and other proceedings had in said court, in the original case of J. M. C. v. A. G. J. and L. R. G., and of the same as it was revived by *sci. fa.* and continued at the instance of M. J. and S. J., administrators of said C., to final judgment thereon, and the returns of *fi. fa.* by the sheriff, as the said pleadings, orders, rulings, entries, and other proceedings in said cause appear on the docket, the minutes of said court, and other books of record in my office; also, a true, correct, full and complete exemplification of all the proceedings, orders, rulings, entries, and other proceedings in the same court, in the collateral garnishment case at the instance of the said M. J. and S. J., administrators as aforesaid, against I. H., founded on the judgment in said original cause, the answer of said H. to said garnishment, the orders taken in said case, the judgment rendered, the receipts given, the rulings of the court on motion to amend, and all other matters pertaining to said

Gunn v. Howell.

original cause and collateral proceedings as aforesaid, as they appear on the docket, minutes of said court, and other books of record in my office," is a substantial compliance with the requisitions of the act of congress respecting the exemplification of foreign records.

2. *Record not excluded on account of insertion of extrinsic matters.*—The insertion in a transcript of a foreign record of matters which do not properly belong to the record, is no ground for the suppression of the entire transcript.

3. *Nor on account of omissions.*—Nor will such transcript be suppressed, on the ground that a material part of the record appears to have been fraudulently suppressed, when there is nothing in the record to show that the omitted part was attainable by the clerk ; the presumption being that the omitted papers had been lost or destroyed, rather than that they were fraudulently suppressed.

4. *What is available under general issue.*—Under the general issue in assumpsit, a discharge of the defendant, by the payment of the money due the plaintiff under a valid garnishment, is available as a defense.

5. *Relevancy of original judgment as evidence for garnishee.*—Where a debtor, when sued by his creditor, sets up a condemnation of the debt by garnishment process at the suit of a creditor of his creditor, the original judgment in the case in which the garnishment was sued out is relevant and admissible evidence for him in establishing that defense.

6. *Irregularities in original suit not available to or against garnishee.*—Mere irregularities in the original suit, which do not affect the validity of the judgment therein rendered, are not available as a defense to the garnishee ; nor can his creditor, when seeking to make him pay the debt again, take advantage of such irregularities in the original suit, or of the failure of the record to show that the original judgment was for an amount as great as the judgment against the garnishee.

7. *General objection to evidence.*—A general objection to evidence, a part of which is legal, may be overruled entirely.

8. *What constitutes record of garnishment case.*—Where a judgment is rendered against a garnishee, condemning a sum of money admitted in his answer to be due to the defendant, and ordering him to deposit with the clerk of the court certain executions in his hands, neither the receipt of the clerk for the executions, nor that of the attaching plaintiff for money paid on the judgment, constitutes any part of the record of the garnishment case, unless made so by statute, by order of the court, or by appropriate reference.

9. *Same.*—So, also, " extracts from the bench docket," and the opinions delivered by the presiding judge on motions in the cause, cannot be considered a part of the record, when not shown to be made so by statute, by order of court, or by appropriate reference.

10. *Amendment of judgment nunc pro tunc.*—A judgment may be amended *nunc pro tunc,* so as to show that, instead of being rendered in favor of the deceased plaintiff, it was really rendered fn favor of his personal representatives ; and this may be done without notice to the defendant, or after his death ; and where such judgment is rendered by a foreign court of general jurisdiction, and the transcript is properly certified under the act of congress, it must be presumed that the allowance of such amendments appertained to the jurisdiction of the court.

11. *Validity of foreign judgment against garnishee.*—Under the constitution and

laws of Georgia, as proved in this case, a judgment against a garnishee, who was personally served with process, cannot be declared void, when collaterally impeached, on the ground that the garnishee was not a resident of that State, when it affirmatively appears that the court had jurisdiction, and that it determined that very question against the garnishee.

12. *Abstract charge.*—An abstract charge may properly be refused.

13. *Liability of agent for interest.*—An agent or attorney, having collected money for his principal, which is afterwards attached and condemned in his hands by process of garnishment, is not liable for interest while the money remained in his hands, unless a demand is first made.

14. *Satisfaction of judgment by garnishee.*—The payment by a garnishee of a valid judgment against him, condemning money in his hands, is a discharge of the debt as against his original creditor.

15. *Presumption in favor of validity of foreign judgment.*—Where the jurisdiction of a foreign court to issue a garishment on a judgment is dependent on the prior issue of an execution on the judgment, and a return thereon of " no property found ;" and the record of a garnishment suit recites such issue and return of an execution, and is properly certified under the act of congress, the effect of the recital is not destroyed or overturned by the fact that the record also shows that an execution was returned with a different endorsement.

16. *Sheriff's return on fi. fa.*—A return by the sheriff on an execution, in these words, "I know of no property subject to the within *fi. fa.*," is equivalent, in a collateral proceeding, to a return of " no property found."

17. *Competency of witness as affected by interest.*—The plaintiff in a judgment against a garnishee is a competent witness for the latter, when sued by his former creditor, to prove payment of the judgment.

APPEAL from the Circuit Court of Chambers.

Tried before the Hon. S. D. HALE.

THIS action was brought by Larkin R. Gunn, against Isaac Howell, to recover the proceeds of certain promissory notes, amounting to about $2,500, which the plaintiff had placed in the defendant's hands for collection ; and was commenced on the 3d March, 1848. The declaration contained the common money counts, and a special count on the contract. The defendant pleaded, "in short by consent," 1st, the general issue ; 2d, payment ; 3d, set-off ; 4th, former adjudication ; 5th, the statute of limitations ; and, 6th, a special plea, averring the rendition of a judgment against the defendant, as the debtor of the plaintiff, by the superior court of Taliaferro county, Georgia, and the payment of that judgment. A complete transcript from the records of the Georgia court, showing all the proceedings had in the garnishment suit and the

original suit to which it was collateral, which are herein-
after particularly described, was incorporated in the 6th
plea; and the sufficiency of that plea was affirmed by
this court, at its June term, 1855, on a former appeal by
the plaintiff.—See the case reported in 27 Ala. 663. After
the remandment of the cáuse, the plaintiff died; and the
action was thereupon revived in the name of his personal
representative.

On the second trial, as appears from the bill of excep-
tions in the present record, the plaintiff proved that his
intestate deposited with the defendant, for collection, cer-
tain notes on persons residing in Georgia, amounting in
the aggregate to about $2,500; that the defendant collected
in March, 1842, over $2,000 on these notes; and that he
refused to pay over the money so collected, on demand of
the intestate in his lifetime. He then proved the rate of
interest in Georgia, and closed. "The defendant then
read in evidence the constitution of the State of Georgia,
and certain acts of the legislature of that State, as pub-
lished in Prince's Digest, on pages 29, 30, 33–41, inclu-
sive, all of which are considered as here set out; and, in
connection therewith, offered to read in evidence what
purported to be an exemplification of the record and pro-
ceedings of the superior court of Taliaferro county, Geor-
gia," which, as set out in the record, showed the following
proceedings:

On the 23d November, 1837, James M. Calloway filed
his petition and declaration in assumpsit, on three prom-
issory notes, against Archibald G. Jones and Larkin R.
Gunn; and a summons was issued to the defendants on
the same day, returnable to the January term, 1838. Ser-
vice was accepted by the defendant Jones on the 23d
December, 1837, and the summons was returned executed
on the defendant Gunn on the 29th November. At the
January term, 1838, Gunn appeared by attorney, and filed
a "plea and answer." In February, 1839, a *scire facias*
was issued, and returned executed on the defendants' at-
torney, to revive the suit in the names of Malcolm and
Samuel Johnson, as the administrators of said James M.
Calloway, then deceased. Under the caption of "March

term, 1839," the record next contains the verdict of a
jury, "in favor of the *plaintiff*, for $1,500, with interest
and cost, against the said Archibald G. Jones as principal,
and Larkin R. Gunn as security;" and the judgment of
the court then follows, in accordance with the verdict. The
transcript then sets out an extract from the execution
docket, in the words and figures following, to-wit:

"(From Execution Docket. Returnable September
term, 1839.)

"Malcolm Johnson and Samuel Johnson, adm'rs, &c. *vs.* Archibald G. Jones, principal, Larkin R. Gunn, security. } Judgment signed 7th March, 1839, for principal $1,500; interest, $170; costs, $11 68.

I know of no property subject to the within *fi. fa.* 16th
March, 1839."

(Signed) " G. OVERTON, sheriff."

On the 7th March, 1842, as the transcript next shows,
Malcolm and Samuel Johnson made affidavit before the
clerk of the court, and gave bond as required by statute,
for the purpose of obtaining a garnishment on the judg-
ment above described; and, on the same day, Isaac How-
ell was summoned by the sheriff as a garnishee, to answer
to his indebtedness to the defendants. On the 7th March,
1843, the garnishee personally appeared, and pleaded to
the garnishment that he was a non-resident of the State
of Georgia; but his plea was overruled, and he was ordered
to answer. He then filed an answer, admitting that
he had in his hands $2,011 58, collected on the notes placed
in his hands by Larkin R. Gunn, and also several execu-
tions against debtors who had not paid; and on this
answer, on the 8th March, 1843, a judgment was rendered
against him as follows: "Wherefore it is considered
by the court, that said plaintiffs do recover against said
Isaac Howell, garnishee in this behalf, the sum of $2,011 58
admitted by said Howell to be owing to said Larkin R.
Gunn; and that he deposit with the clerk of this court
the said executions described in his answer; and that
the said Howell be acquitted, as against the said Gunn, of
the said sum of $2,011 58, and of the said sums of money

specified·in said executions." Next below this judgment in the transcript is copied the clerk's receipt for the executions; then follows an extract from the execution docket, containing the receipt of Malcolm Johnson, dated the 14th March, 1843, for money paid by Howell in full satisfaction of the judgment against him as garnishee; and then several extracts "from the bench docket," showing the several entries by the presiding judge of the proceedings had in the cause at January term, 1838, March term, 1839, September term, 1842, and March term, 1843.

On the 25th February, 1856, as the next entry in the transcript shows, the following judgment was rendered in the cause:

"Malcolm Johnson and Samuel Johnson, administrators of all and singular the goods and chattels, rights and credits, of James M. Calloway, deceased,

*vs.*

Archibald G. Jones, principal, and Larkin R. Gunn, security, defendants; Isaac Howell, garnishee.

"Ordered by the court, that the order in the above stated case, allowing plaintiffs to sign judgment against the garnishee, Isaac Howell, be amended *nunc pro tunc*, so as to embrace in its recitals the following facts, which did legally appear to the court at the time of allowing said order, but were omitted from the record—that is to say, that the plaintiffs were then the holders of a valid judgment against the defendants; that an execution had been issued thereon, and returned by the sheriff of Taliaferro county 'no property subject thereto;' that the plaintiffs had filed in the clerk's office their affidavit, in the terms of the law; that summons of garnishment had been legally served on said garnishee, Isaac Howell; and that said garnishee had answered said summons, admitting himself to be indebted to said Larkin R. Gunn as stated in said order. And it is further ordered, that this order be entered upon the minutes of this court, *nunc pro tunc*, as a part of the true record in said cause; and it is further ordered, that the caption of the case, as it appears in said

original order allowing judgment to be signed, be so amended as to conform to the caption of this amended order."

On the 29th August, 1856, as the next entry shows, the following judgment was rendered in the cause:

"James M. Calloway *vs.* Archibald G. Jones, and Larkin R. Gunn. — *Scire facias* having issued on the suggestion of the death of the plaintiff, James M. Calloway, returnable to the March term of said court, 1839, to make Malcolm Johnson and Samuel Johnson, as administrators of said Calloway, parties plaintiff in lieu of said James M. Calloway; and it appearing to the court that said Malcolm and Samuel, as such administrators, were made parties plaintiff in said original cause at the March term, 1839, before the verdict and judgment were rendered in said original cause; which said verdict and judgment were in the name of the 'plaintiff' generally, without specifying any particular plaintiff or plaintiffs; and it further appearing to the court that the order making such parties plaintiff was, by mistake, omitted to be entered upon the minutes of this court at the proper term,—it is therefore ordered by the court, that this order be entered upon the minutes of this court as of the March term, 1839, making the said Malcolm and Samuel, as administrators of said James M. Calloway, deceased, parties plaintiff in lieu of said Calloway; and it is further ordered, that said verdict and judgment in said original cause [be] stated in the names of said Malcolm and Samuel, as such administrators, who were the parties plaintiff at the time such verdict and judgment were rendered in said original cause; this order to be entered *nunc pro tunc.*"

The transcript also contains two opinions delivered by the presiding judge of the superior court, on the 30th August, 1856, on motions to set aside the original and amended judments; but these require no particular notice.

The certificates appended to the transcript were as follows:

"State of Georgia, Taliaferro county. — I, Quinia O'Neal, clerk of the superior court of said county, do

Gunn v. Howell.

hereby certify, that the above and foregoing sheets of paper, numbered regularly from one to twenty-three, do contain a true, correct, full and complete exemplification of all the pleadings, orders, rulings, entries, and other proceedings had in said court, in the original case of James M. Calloway v. Archibald G. Jones and Larkin R. Gunn, and of the same as it was revived by *scire facias* and continued at the instance of Malcolm Johnson and Samuel Johnson, the administrators of said Calloway, to final judgment thereon, and the returns of *fi. fa.* by the sheriff, as the said pleadings, orders, rulings, entries, and other proceedings in said cause appear on the docket, the minutes of the court, and other books of record in my office ; and also a true, correct, full and complete exemplification of all the proceedings, orders, rulings, entries, and other proceedings in the same court, in the collateral case of ganishment at the instance of said Malcolm Johnson and Samuel Johnson, administrators as aforesaid, against Isaac Howell, founded on the judgment in said original cause, the answer of said Howell to said garnishment, the orders taken in said cause, the judgment rendered, the receipts given, the rulings of the court on motions to amend, and all other matters pertaining to said original cause and collateral proceedings under process of garnishment, as they appear on the docket, the minutes of said court, and other books of record in my office. The above and foregoing contain a full and complete exemplification of everything pertaining to said original and collateral cause and the proceedings had thereon in said court, as the same appear from the books and records of my office.　In testimony whereof, I hereunto set my hand, and affix the seal of said court," &c.

"State of Georgia,｝ I, James Thomas, judge of the Northern District. superior courts of said district, presiding in the county of Taliaferro in said district, do hereby certify, that the foregoing certificate of Quinia O'Neal, clerk of the superior court of said county, is in due form ; and I further certify, that his said certificate, or attestation, in relation to the records and minutes of said court, the execution docket, and bench docket, and

in relation to all matters embraced in said attestation, is in due form, and by the proper officer. In witness whereof, I do hereunto set my hand," &c.

"State of Georgia, ⎱ I, Quinia O'Neal, clerk of the Taliaferro county. ⎰ superior court of said county, do hereby certify, that Hon. James Thomas, whose certificate appears above, is duly commissioned and qualified as presiding justice of the superior court of said county. Given under my hand, and the seal of my said office," &c.

The plaintiff objected to the admission of this entire transcript, on the following specified grounds: "1st, because it is not properly certified; 2d, because the clerk's certificate specifies the issue and return of an execution, when no execution is set out in said record; 3d, because it shows the fraudulent withholding of the execution and return thereon; 4th, because the defendant's plea counts upon a judgment in favor of James M. Calloway, while the record shows a judgment in favor of Malcolm Johnson and Samuel Johnson; 5th, because by said paper the case of Malcolm Johnson and Samuel Johnson against the present defendant is incumbered with divers other matters which form no part of that record—that is to say, the record of a suit in favor of James M. Calloway against A. G. Jones and Larkin R. Gunn, with certain entries, or memoranda, purporting to be from the bench docket, no portion of which forms part of the record in the case of Malcolm and Samuel Johnson against Isaac Howell; and, 6th, because the same is uncertain and contradictory." The court overruled each of these objections, and the plaintiff excepted.

The plaintiff also made the following objections to specific portions of the transcript: "To what purports to be a petition, or declaration, in a case of James M. Calloway against A. G. Jones and L. R. Gunn, with the summons, acknowledgment of service by Jones, and the return as to service on Gunn, because they are irrelevant to the issue, because they have no connection with the record of the suit against Isaac Howell, and because no statute of Georgia is shown which makes the same any part of the record of the case against the present de-

fendant." "To what purports to be a *scire facias* in favor
of Malcolm and Samuel Johnson against A. G. Jones
and L. R. Gunn, of 7th February, 1837, with the return
executed on A. H. Stephens as attorney, because the same
is not relevant and proper evidence in this case, and be-
cause the same does not pursue the declaration as to the
cause of action." "Also, to what purports to be the ver-
dict of a jury in the case of Calloway against Jones and
Gunn, because irrelevant and improper." "Also, to what
purports to be a judgment in the case of Calloway, be-
cause it is irrelevant to the issue, and because it is not
shown to form part of the proceedings against the present
defendant." "Also, to what purports to be an entry, or
copy of an entry, from an execution docket, of the issue
and return of an execution, bearing date the 16th March,
1839, because the same is irrelevant to the issue; 2d, be-
cause the same is not shown to form part of the proceed-
ings against the present defendant; 3d, because the same
is secondary evidence; 4th, because no statute is shown
making such entry a record; 5th, because of a variance
as to parties between the averments of the plea and the
judgment offered; 6th, because the return, 'I know of no
property subject to the within *fi. fa.*,' is not a compliance
with the statute of Georgia, and affords no ground for a
summons of garnishment." "Also, to what purports to
be an affidavit by Malcolm Johnson and Samuel Johnson,
of 7th March, 1842, because of a variance as to parties
between the judgment recited in the plea and that recited
in the affidavit." "Also, to what purports to be the
sheriff's return of service on the defendant to answer as
garnishee, bearing date March 7, 1842, because the same
is secondary evidence, and a copy of the summons would
be better evidence." "Also, to what purports to be a
judgment against Howell as garnishee, because, at the
time of the rendition of said judgment, said superior
court had not jurisdiction to render said judgment, 1st,
because there had not been an issue and return of an ex-
ecution, as required by the statutes of Georgia; 2d, be-
cause said Howell did not reside in said county of Talia-
ferro, in Georgia; and, 3d, because James M. Calloway,

the plaintiff in the original judgment, was dead." "Also, to what purports to be a receipt by the clerk, of 8th March, 1843, for certain executions, because the same is irrelevant, and forms no part of the record." "Also, to what purports to be 'from the execution docket,' to-wit, a receipt, purporting to have been given by Malcolm Johnson, dated 14th March, 1843, for $2,011 58; because the same is secondary evidence, no statute being shown making such entry a record, and because it is not a record." "Also, to certain entries purporting to be 'from the bench docket,' because the same are irrelevant to the issue, and because no statute or authority is shown making such entries a record, and because they are not a record." "Also, to what purports to be certain entries from the minutes, because the same are irrelevant to the issue, and because they are not a record." "Also, to what purports to be a judgment against Howell as garnishee, because said superior court did not have jurisdiction to render said judgment—1st, because no such return had been made as required by the statute of Georgia to give jurisdiction to said court; 2d, because Calloway, the plaintiff, was dead; and, 3d, because said Howell did not reside in said county of Taliaferro." "Also, to what purports to be a judgment of 25th February, 1856, in a case wherein Malcolm and Samuel Johnson, as administrators of James M. Calloway, deceased, were plaintiffs, and Archibald G. Jones and Larkin R. Gunn were defendants, and Isaac Howell as garnishee; 1st, because the same is irrelevant; 2d, because the said superior court is not shown to possess or have jurisdiction to make such amendment *nunc pro tunc;* 3d, because said entry was made subsequent to the commencement of this suit, and without notice to Gunn or his executor; 4th, because said amendment *nunc pro tunc* can have no connection with the original cause, nor serve as a basis for a judgment against the garnishee; 5th, because, if the original judgment and proceedings were void, the judgment against the garnishee was also void, and no such amendment *nunc pro tunc* can give validity to the judgment against the garnishee; 6th, because no statute is shown giving jurisdiction to said court to make

such amendment; 7th, because said amendment is made in contravention of the record as to the sheriff's return; 8th, because the same is worthless in this cause as an amendment, having no foundation to sustain it; 9th, because a judgment is an entire thing, and cannot be made up by parcels at different and remote periods; and, 10th, because the same is not an amendment." "Also, to what purports to be a judgment of August 29th, 1856, which seeks to revive the judgment obtained in favor of Calloway, and to make Malcolm and Samuel Johnson, as administrators of said Calloway, the plaintiffs in the judgment against A. G. Jones and L. R. Gunn; 1st, because said court had not jurisdiction to make said entry *nunc pro tunc* at a period so remote; 2d, because the same is irrelevant to the garnishment case against this defendant; 3d, because such amendment can have no effect to sustain the judgment of garnishment; 4th, because the same is uncertain, insufficient, and not in any manner connected with the judgment on garnishment; and, 5th, because the same is not an amendment, and cannot be looked to as such." "Also, to what purports to be the proceedings of said superior court of August 30, 1856, in the case of Calloway against Jones and Gunn, because, 1st, the same is irrelevant and foreign to the issue in this case; 2d, because the same was made since the commencement of this suit; 3d, because the same is not a judgment, and is inconsistent and irreconcilable; 4th, because the same is uncertain, and insufficient to be the basis of any defense in this action; 5th, because the same is not engrafted in or upon the judgment on garnishment; and, 6th, because the same cannot be considered as a part of the proceedings against the garnishee." "Also, to what purports to be the action of the court, without date, in the case of Calloway's administrator against Howell; because the same is irrelevant to the issue, and forms no part of the proceedings against the present defendant; and because the same was made after the death of L. R. Gunn, and without notice to his representatives." All these objections, severally and collectively, were overruled by the court; and the plaintiff excepted to each decision.

The defendant then offered in evidence the deposition of Malcolm Johnson, who testified to the payment of the judgment against the defendant as garnishee, at the time shown by the receipt copied into the transcript above described. Before crossing the interrogatories to this witness, the plaintiff objected to his competency on the ground of interest; and, before going into the trial, moved to suppress his deposition on that ground. The court overruled the objection, and allowed the deposition to be read; to which the plaintiff excepted.

" The plaintiff introduced evidence, tending to show that Larkin R. Gunn and Isaac Howell resided in Chambers county, Alabama, from 1840 up to the death of said Gunn, who died in January, 1856; and it was also in evidence that, at the time of the judgment on garnishment, in 1842, and in March, 1843, there was no supreme court in Georgia. The plaintiff further read in evidence several pages from Prince's Digest of the statutes of Georgia, all of which are considered as here set out, and may be read from the printed volume, to-wit: p. 37, § 23; p. 42, § 8; p. 422, § 12; p. 428, § 31; p. 442, § 99. There was, also, evidence conducing to prove that Gunn was to pay the expenses incurred by Howell in going to Georgia and collecting the notes; that the parties met to have a settlement, prior to the garnishment, and Gunn then objected to paying Howell's expenses of traveling by stage, and demanded that Howell should execute his note for the full amount of the notes; that Howell refused to do this, but proposed to account for the sums collected, and to turn over to Gunn the receipts of the officers in whose hands he had placed the remainder of the notes; that Gunn refused to accept this proposition, and that Howell had made one trip or more to Georgia, a distance of one hundred and seventy-five miles."

The plaintiff asked the following charges to the jury:

" 1. If the jury believe from the evidence that the plaintiff's intestate and the defendant were resident citizens of Alabama at the date of the service of the garnishment, then the defendant was not amenable to the process of garnishment, and a payment of the judgment on gar-

Gunn v. Howell.

nishment, rendered under such circumstances, will not protect him from a recovery in this case.

" 2. If the jury believe from the evidence that, at the time of the service of garnishment, the defendant had not collected any money on the debts due to plaintiff's testator; and that said debts were in the hands of one Mercer; and that the garnishee failed to rely upon this matter, and permitted judgment to go against him for the amount of the good debts,—then the payment of the judgment rendered under such circumstances will not protect him from a recovery in this case.

" 3. If the jury find from the evidence that, as early as February, 1842, the defendant had collected the sum of $2,267 90 on the demands received from plaintiff's testator; and that he did not answer the garnishment until March, 1843; and that he only set forth in his answer the amount collected, without interest,—then the plaintiff is entitled (if to no more) to a verdict for interest on the principal sum held in his hands, for the time which elapsed between the service of the garnishment and the filing of his answer, unless he satisfies them that he held the funds, or did not get interest on them.

"4. That the proceedings against the defendant disclosed by the record from the superior court of Taliaferro county, Georgia, with the evidence of Malcolm Johnson, do not disclose such a state of facts as will protect the defendant from a recovery in this case.

" 5. That if the jury believe said record speaks the truth, then the court rendering the judgment against the defendant had no jurisdiction in the premises, and the payment of a judgment rendered under such circumstances will not protect the defendant from a recovery in this case.

" 6. That there is no such amendment of the judgment against Jones and Gunn as will sustain the judgment against the defendant, or protect him from a recovery in this case.

" 7. That if the jury believe from the evidence that, on the 7th March, 1839, a judgment had been rendered in favor of James M. Calloway; and that an execution,

issued on this judgment, was returned by the sheriff in
these words, 'I know of no property subject to the within
*fi. fa.*,'—this was not such an issue and return as the
Georgia statutes required, so as to authorize the issue of
process of garnishment against the defendant.

"8. That the sheriff's return on an execution, on 16th
March, 1839, in these words, 'I know of no property sub-
ject to the within *fi. fa.*,' would not authorize the process
of garnishment, by making affidavit and giving bond, in
March, 1842; and that if the defendant improperly sub-
mitted to a judgment upon garnishment, the payment of
such judgment will not protect him from a recovery in
this case.

"9. That if they believed the record discloses all the
proceedings had against the defendant as garnishee, his
payment of a judgment rendered against him under such
circumstances would not defeat a recovery by the present
plaintiff.

"10. That if they believed the record sets forth all the
proceedings against the defendant, then his appearance in
March, 1843, was voluntary on his part; and that if he
submitted to a judgment under such circumstances, and
paid the same *to the present plaintiff*, such judgment and
payment would not defeat a recovery in this case.

"11. That the record read in evidence, with the con-
stitution and statutes of Georgia as read in evidence, does
not disclose such proceedings as will bar the plaintiff's
right to recover in this action."

The court refused each of these charges, and then in-
structed the jury, " that although there might be irregu-
larities in the proceedings by garnishment, yet, if the
defendant paid the judgment rendered against him in
good faith, such payment will operate as a full defense to
this suit."

The plaintiff excepted to the charge given by the court,
as well as to the refusal to give the several charges asked;
and he now assigns twenty-two errors on the record,
embracing all the rulings of the court to which, as above
stated, he reserved exceptions.

GEO. W. GUNN, for appellant.

Wm. P. CHILTON, contra.

A. J. WALKER, C. J.—The objection to the entire record given in evidence, upon the ground that the certificate was defective, was not well taken. The certificate contains all that was necessary to legally attest both the record of the original suit against Jones and Gunn, and of the proceeding by garnishment against Howell, as the debtor of the defendants in the former suit. There are, therefore, really two certificates, each attesting a different record, and a common signature and seal applicable alike to both. We know of no reason why such an attestation should be deemed fatally defective. It is clear that there is a certificate attesting each record, and each certificate is alike fortified by the signature and seal. This constitutes a substantial compliance with the act of congress.

[2.] It may be that the transcript does contain things which do not belong to the record. If it does, it was no ground far a motion to exclude the entire record.

[3.] The objection, that a fraudulent exclusion of an execution, a part of the record, is apparent, is not well taken. There is nothing to indicate an exclusion of any execution or other paper from the record, which was attainable by the clerk. The inference is, in the absence of all evidence to the contrary, that the execution had been lost or destroyed by accident, rather than it was fraudulently suppressed. *Omnia presumuntur rite esse acta.*

[4.] The record offered in evidence did not correspond with that described in the 6th plea, as it is explained by the agreement of counsel. But there was a plea of non-assumpsit, or the general issue; and under that, a discharge of the defendant, by a payment of the money due the plaintiff under a valid garnishment, was an available defense.—1 Chitty on Pl. 478 ; Cook v. Field, 3 Ala. 58. The court was, therefore, right in refusing to reject the record entirely, because it did not correspond with the allegations of the 6th plea.

[5.] The record of the proceedigs in the original suit of Johnson & Johnson v. Jones & Gunn, was relevant in this case, and admissible in evidence. It was permissible for the defendant in garnishment to show that there was a valid judgment against his creditor, which he paid under the compulsion of a garnishment, for the existence of such a judgment was a part of the defense; and there was no error in overruling the plaintiff's objections to the different parts of the record in that case.

[6.] The garnishee could not avail himself of any mere irregularities in the original suit against his creditor. He could not have assailed the judgment collaterally, upon the ground that it was voidable. He, therefore, is not deprived of his protection as a garnishee from a second payment, on account of mere irregularities in the original suit. The judgment in the original suit was not void. The court had jurisdiction of the defendants' persons. They pleaded and appeared by an attorney. The court properly refused to exclude any part of the record because it was irregular. If the service of notice to revive the suit in the name of the administrators of the deceased plaintiff was not consistent with the Georgia statute, it is a mere irregularity, not affecting the validity of the judgment. So, also, the omission of the record to show that the jury was empaneled and sworn, the service of the *scire facias* for the revivor of the suit on the defendants' attorney, and the failure of the record in the garnishment suit to show that the original judgment was for an amount as great as that which was rendered against the garnishee, were, at most, mere irregularities, which do not render the judgments void.

The verdict to which objection was made was a matter of record. It seems to be a part of the judgment entry, and the predicate of the judgment.

[7.] One objection to the admissibility of the record specifies an extract from the execution docket, showing the issue and return of an execution. The exemplification does not show that the sheriff's endorsement upon the execution was copied from the execution docket. The endorsement of a sheriff upon an execution returned

by him is a matter of record.—Creagh v. Savage, 14 Ala. 454; Hardy v. Gascoignes & Holly, 6 P. 447; Barron v. Tart, 18 Ala. 668. So much of the evidence covered by the objection as pertained to the sheriff's return was legal; and the objection, being a general one to evidence a part of which was legal, was properly overruled.

[8.] The two receipts—one by Bristow, the clerk, and the other by one of the plaintiffs in garnishment—were not parts of the record.—Carlisle v. Tuttle, 30 Ala. 627; Martin v. Martin, 22 Ala. 102; Mitchell v. Mitchell, 3 St. & P. 81; White v. Strother, 11 Ala. 723. The copies of them in the transcript were secondary evidence of private writings, and the court erred in overruling the plaintiff's objection to them. We cannot pronounce these receipts redundant evidence.—Doe v. Reynolds, 27 Ala. 364. They contributed to corroborate the witness Johnson. The credibility of Johnson's testimony was a question for the jury; and we cannot assert that the jury would have credited the evidence of Johnson in the absence of corroboration. This is not a case of merely redundant, or superfluous testimony, introduced to support a right otherwise established by indisputable proof.—Kyle v. Mays, 22 Ala. 692; Frierson v. Frierson, 21 Ala. 549; Parsons v. Boyd, 20 Ala. 112.

[9.] The extracts "from the bench docket" did not belong to the record, and should have been excluded; but it is probable that the admission of that testimony would not work a reversal, as it seems incapable of affecting the issue in any way. The opinions delivered by the judge in Georgia, likewise, were not matters of record, and were inadmissible.

[10.] When this case was before in this court, (27 Ala. 663,) it was decided, that the record of the proceeding against the garnishee in Georgia was defective, because it did not show the jurisdiction of the court. Since that time, an amendment *nunc pro tunc*, alike of the original judgment against the garnishee's creditor, and of the record of the proceeding against the garnishee, was made. These amendments show that the original judgment was in favor of the representatives of Calloway, there having

been a revivor of the suit after the death of Calloway; that an execution issued, and was returned " no property found;" that the affidavit, preliminary to the issue of garnishment, required by the Georgia law, was made; that there was a valid judgment in favor of the plaintiffs in garnishment, against the creditor of the garnishee, and that a regular summons of garnishment was served. These amendments *nunc pro tunc* supply every fact necessary to uphold the jurisdiction of the court to render the judgment against the granishee, and the ground upon which there was a reversal when the case was before in this court no longer exists, if the court had authority to make the amendments *nunc pro tunc.*

There are many arguments adduced to show the want of authority to make those amendments; but none of them are, in our opinion, sound. It is said that the original judgment was in favor of a dead man, was therefore void, and could not be amended. The reply to this argument is, that the original judgment was really in favor of the representatives of the deceased, and was entered up by clerical error in favor of the deceased; and that the office of the amendment *nunc pro tunc* was to make the record declare the judgment as it was in fact— to make the record speak the truth, and show that the judgment was valid at the commencement. Our own decisions are conclusive against the objections, that the amendments *nunc pro tunc* were made without notice. Glass v. Glass, 24 Ala. 468; Allen v. Shotwell, 3 Ala. 281; Brown v. Bartlett, 2 Ala. 29; Fuqua v. Carrol, Minor, 170. The same reason, which dispenses with the necessity of notice, would justify the making an amendment *nunc pro tunc* after the defendant's death. This court must presume, in the absence of opposing evidence, upon the authority of the certificates to the exemplification of the foreign record, showing the amendment *nunc pro tunc,* that the allowance of such an amendment appertained to the jurisdiction of the court.—Slaughter v. Cunningham, 24 Ala. 269; Gunn v. Howell, 27 Ala. 674.

[11.] The first charge asked, objecting to the validity of the judgment against the garnishee, that he was a

resident of the State of Alabama, cannot be sustained. The garnishee pleaded that very matter to the jurisdiction of the court, and his plea was overruled. The superior court of Georgia, having jurisdiction over the subject of garnishment, had necessarily authority to determine whether a non-resident, under the laws of that State, could be subjected to the process of garnishment.—Wyatt's Adm'r v. Rambo, 29 Ala. 510. Its decision upon that question must be deemed conclusive in favor of the garnishee.

[12.] If there is any proof in the record, which justified the asking of the second charge, we have not found it. We therefore regard the refusal of the charge as correct, because it was abstract, if for no other reason.

[13.] There was no error in the refusal of the third charge asked, because the plaintiff could have no right to interest upon funds collected by the defendant as his agent, for the period mentioned in the charge, unless a demand had previously been made.—Sally v. Capps, 1 Ala. 121; Burton v. Peck, 1 S. & P. 486; McBroom v. Governor, 6 P. 32; Kimbro v. Waller, 21 Ala. 376.

[14.] The Georgia record showed a valid judgment against the garnishee; and if the defendant paid the money upon it, he is entitled to protection. The 4th, 5th, 6th, 9th, 10th, and 11th charges, were properly refused.

[15.] The 7th charge assumes, erroneously as we think, that the execution upon the original judgment was in the name of Calloway, then deceased, and that the execution which was returned with the endorsement, "I *know* of no property subject to the within *fi. fa.*," was the one upon the return of which the proceedings against the garnishee were predicated. The recitals of the judgment against the garnishee, as amended, show that there was a return of no property subject to the execution. Now this recital, upon a question giving to the jurisdiction of the court, must be deemed, at least *prima facie*, correct; and it is not overturned by the fact, that one execution had been returned with a different endorsement. Both the recital, and the fact that there was an execution with a different return, may be true.

The 8th charge is also obnoxious to the objection, that it erroneously assumes that the proceeding against the garnishee rests upon a different return from that stated in the record.

[16.] The refusal to give the 8th and 9th charges may also be sustained upon the ground, that the sheriff's return, "I know of no property subject to the within *fi. fa.*," is equivalent, in a collateral proceeding, to a return of "*nulla bona.*" It is his duty to find out any property within his bailiwick; and the presumption is, that he has discharged his duty by making diligent search; and when he says he knows of no property subject to the *fi. fa.*, it should be deemed, in a collateral proceeding, at least equivalent to a general return of *nulla bona.*

What we have already said leads to the conclusion, that there was no error in the charge given by the court.

[17.] The witness Johnson was competent to testify for the defendant. The judgment upon which he collected the money from the garnishee being valid, he was rather testifying against his interest in deposing to the payment of the judgment.

The judgment of the court below is reversed, and the cause remanded.