# Smith *et al. v.* Jackson.

*Bill in Equity by Ward, after Probate Decree against Guardian, Execution against Sureties, and Garnishment, to enforce and foreclose Mortgage held by Surety.*

1. *Probate decree on settlement of guardian's accounts; conclusiveness as to sureties, and garnishment thereon.*—On final settlement of a guardian's accounts in the Probate Court, the decree should be rendered against the guardian alone, and not against him and the sureties on his official bond; and if improperly rendered against the sureties also, it is nevertheless not conclusive on them; and although the statute authorizes an execution on the decree, against him and his sureties (Rev. Code, § 2450), it will not support a garnishment against the sureties, nor a judgment against a garnishee who admits an indebtness to them. (BRICKELL, C. J., dissenting.)

APPEAL from the Chancery Court of Greene.

Heard before the Hon. A. W. DILLARD.

The facts of this case were thus stated in the opinion delivered by MANNING, J.: "This is a preferred case under the statute, being an appeal from a decree overruling a demurrer to a bill in chancery. The bill, filed by appellee, against Foster M. Kirksey, Frank P. Smith, and Elam Smith, as defendants, shows that upon a settlement in the Probate Court of Greene county, by one Thomas Eatman, of his guardianship of appellee, he was found to be indebted to her, April 17th, 1876, in the sum of $4,938.80½ ; for which a decree was rendered in her favor, against 'said Thomas Eatman, and Elam Smith, E. H. Glass, F. P. Smith, and Nathan Eatman, securities on his official bond as such guardian.' On this judgment, execution was issued; and a summons in garnishment was sued out against Kirksey, to answer what he was indebted to defendants. He answered, on the second Monday in May, that he owed defendants *Elam Smith and Frank P. Smith* $9,000, besides interest, upon three notes past due, secured by a mortgage of land in Greene county, on one of which notes they had obtained a judgment against him. June 12th, judgment was rendered on this answer, in favor of appellee, against Kirksey as garnishee, for the amount of Eatman's debt to her; and on the 5th September, 1876, this bill was filed, alleging the premises, and also that Eatman, the guardian, was wholly insolvent, and that neither of his sureties nor Kirksey had sufficient property, liable to execution at law, for the payment of the amount due to appellee; whereupon she prayed to be subrogated to the ben-

efit of Kirksey's mortgage to the Smiths, and to a sale of the property it covered, to pay her judgment against Kirksey as garnishee. The Smiths demurred to the bill, alleging want of jurisdiction in the Court of Probate to render the judgment in garnishment; that they were not parties to the settlement in that court, and there was no decree against them; and that the garnishment was not issued and made returnable according to law. The chancellor overruled the demurrer, and from this the appeal is taken."

E. MORGAN, with SNEDICOR, COCKRELL & HEAD, for the appellant.

THOS. W. COLEMAN, with COLEMAN, CLARK & McQUEEN, contra.

MANNING, J. [After stating the facts as above.]—The Revised Code (§ 2450) provides: "All final decrees against guardians have the force and effect of judgments at law, upon which execution may issue against them and the sureties on their bonds." Section 802 says: "Courts of Probate may issue process of garnishment upon decrees for money, in favor of plaintiffs in such decrees, returnable to their regular terms, upon compliance with the laws respecting garnishments in the Circuit Court on judgments, and may render judgments or decrees on the answers of such garnishees, enforce the collection thereof," &c. And section 2892 prescribes the mode in which garnishment process may be sued out upon the judgments of Circuit Courts. It is by these enactments, that the suit must be maintained, if it can be maintained at all.

A proceeding under section 803, against a garnishee, must be founded on a judgment or decree against the person to whom he is supposed to be indebted, and in favor of the plaintiff in the garnishment; and even when a garnishment is served in execution of a writ of attachment in a pending cause, no judgment can be rendered against the garnishee, until one is rendered against the defendant in attachment; notwithstanding that, for his protection against wrong, the plaintiff must have executed a sufficient indemnifying bond. *Gaines v. Beirne*, 3 Ala. 114; *Leigh v. Smith*, 5 Ala. 583; *Case v. Moore*, 21 Ala. 758; *Chambers v. Yarnell*, 37 Ala. 400.

Is the decree of a Probate Court, when rendered conformably to law, upon the final settlement of a guardian, a decree or judgment against his sureties also? The statute, it is true, says that on such final decrees executions may issue against the guardians "and the sureties on their bonds."

But it speaks of them as decrees against the guardians only; and such decrees, it says, "shall have the force and effect of judgments at law." What is this force and effect of a judgment at law, all of which the final decree against a guardian shall have? Not only may a writ of execution be issued on it, but it conclusively establishes the liability of the defendant. This it does, because he was a party to the proceeding, and has had his day in court. But the persons charged as sureties have not had their day in court, and the decree does not conclusively establish their liability. Also, all the acts, contracts, and transactions, which created the liability for which the decree was rendered, are merged in the decree; so that, while unreversed, none of those things are required to support, or can be brought into question to prevent, the operation or execution of the decree. This is not true in respect to the supposed sureties. A bond by which they are bound, is necessary to support the execution against them; and they are entitled to contest its validity. Moreover, if the defendant should have to be sued again for the same matters, in another jurisdiction, the decree alone, without and in spite of any extrinsic evidence, would entitle plaintiff to a recovery against him. This fact is used, in *Clarke v. West* (5 Ala. 124), to show how improper it was to render a formal decree against the sureties in that case, instead of only awarding execution against them. Finally, if the guardian should die, the final decree against him would, by itself, furnish a sufficient cause of action for a suit against his administrator, but not against the administrator of one of his sureties, in the event of the death of the latter. The consequences mentioned all result from the very nature of a judgment, because of its conclusiveness; the characteristic which induced Sir Edward Coke to say of it: "Judgment— *judicium, quasi juris dictum,* the very voice of law and right, and therefore, *judicium semper pro veritate accipitur.*"—Co. Lit. 39 *a*.

But, authority to issue execution against a person is not, by itself, a judgment against him. In *Philipson v. Mangles*, certain plaintiffs had obtained a formal order against persons who were bail on a forfeited recognizance, as follows: "Therefore, it is considered, that the said plaintiffs have their execution thereupon against the bail." The Court of King's Bench held, that this was not a judgment. Lord ELLENBOROUGH, C. J., said: "It is an award of execution, and not a judgment, properly so called."—11 East, 516. And this court held, in *Hoogland v. Jewett* (30 Ala. p. 718), "that the mere naked liability of the sureties to an execution, resulting from the return of *nulla bona*, is not such a judgment

as that an action of debt could be maintained on it;" and because it was not a judgment, that it was not to be revived by *scire facias*, as insisted on in that case.

So far as the question involved in the cause before us is concerned—the question whether there was a judgment upon which process of garnishment could be sued out against appellant, Frank P. Smith—the rulings and opinion in the case last cited, and in *Clarke v. West, supra*, are directly in point; and they arose under similar statutes, that differ from section 2450, *supra*, in no particular which affects their authority as precedents in the present case. The acts under which those cases were determined—section 2281, and an old statute which is, in effect, embraced in that section—related to executors and administrators, and provided that, upon executions on final decrees for money, of the Probate or Orphans' Court, against them, being returned "no property found," then executions might run against the sureties on their bonds also; while the law under which the case now before us is to be determined—R. C. § 2450—relates to guardians, and differs from that above referred to, only in authorizing the issuance of executions against the sureties, on the judgment against their principal, the guardian, *without* a return of no property of his to be found. In either case, the execution against the sureties is founded on the decree against their principal, and upon the bond they signed for him, and not at all upon any judgment or decree against them. This was plainly the idea that inspired the vigorous reasoning in the opinion in *Jewett v. Hoogland, supra;* in which, also, an inaccuracy relating to this matter, in the opinion in *Thompson v. Bondurant* (15 Ala. 346), is pointed out and corrected. It is to be borne in mind, that the decree to which the part of section 2450 quoted above relates, is that which is passed at the final settlement of the guardian's accounts. He is a party, and in court; and when, at the conclusion of his accounting, it is ascertained how much of his ward's money he has in hand,—against him, very properly, the law authorizes a decree that shall have "the force and effect of a judgment at law." This decree it is his duty to pay; nor does the law presume he will not pay it, when required to do so. If he should not, a writ of execution on it can, of course, be taken out against him; and the statute provides that it may be taken out against the sureties on his bond, also—that is, against the persons who appear thereby, but have not been adjudged, to be such sureties. To see who they are, the bond must be looked up; and upon it— not upon a decree that has the force and effect of a judgment at law—the execution is issued against them.

[*Smith et al. v. Jackson.*]

It appears, however, that the Probate Court of Greene county did in fact, when it rendered a decree against the guardian, Eatman, go on, and render it against his sureties also. This the statute conferred on it no jurisdiction to do. It was a summary proceeding, without any notice to the parties to be charged thereby; and the order made in it was wholly void as a judgment. What RICE, J., says in *Kirby's Adm'r v. Anders* (26 Ala. 468), which arose under the section above (R. C. § 2281), and came from a court of probate,—is as true in the case before us, as in that: "No power is conferred on that court, by this section, or any other part of our law, to render a judgment against the sureties of an executor or administrator on such return of 'no property.'" It had, says Judge HENRY GOLDTHWAITE (in *Clarke v. West, supra*), "no authority to do so in this summary manner." And A. J. WALKER, J., says (in *Jewett v. Hoogland, supra*): "Such an effect could not be conceded to a proceeding without judicial action, and without notice."

But why, it may be asked, should not garnishment process be issued, and a judgment be rendered, against a garnishee, as debtor to a surety for an executor or guardian, if an execution may be issued against such surety? To this there are more than one sufficient answers. First, unless the statute had authorized it, no execution could be had against the property of the surety; and the statute does not authorize anything but an execution. A second reason is, that a judgment, ascertaining the fact of suretyship, ought first to be obtained against the person sought to be charged as surety; because, if not, then a judicial appropriation, conclusive in its nature, of moneys due to the supposed surety, is made to a third person, to whom the supposed surety may really owe nothing at all, and the latter be thereby injured beyond remedy. The process of garnishment is not against him, and, therefore, it is not required that it be served upon him. He might reside at a distance, and never hear anything of the proceeding. Without any notice to him, a judgment might thus be rendered against his debtor, the garnishee, upon the mere answer of indebtedness by the latter; the payment of which judgment by the garnishee to the plaintiff, whether under the coercion of an execution, or made, as it might be, voluntarily (*Mills & Co. v. Stewart*, 12 Ala. 90; *Gunn v. Howell*, 35 Ala. 144), would forever discharge the garnishee, and at the same time pass the money he owed to the supposed surety, into the hands of a person who might not have any just title to it. For it might be, that the supposed surety could show that he had been released from the bond, or that it had been cunningly altered to make him liable for an admin-

[Smith et al. v. Jackson.]

istration or guardianship for which it was not executed, or that his name to it was a forgery. And yet, though he should do this, and to do so, be allowed to go behind a judgment that should be conclusive of all such matters, he might still be unable to get his money back, there being no security for it, if the person receiving it proved to be not responsible. Such a result as this could hardly ever happen, if, upon the decree against the guardian, only a writ of execution, according to the statute, should go out against those who appear to be the sureties upon his bond. For, by the proceedings upon that, they would receive notice of the claim against them, and be enabled to controvert it, if entitled to do so. If the plaintiff in such a decree desired garnishment process against a debtor to the sureties of his guardian, he might obtain it by bringing suit against his bondsmen, and getting a judgment therein; or, before getting judgment, upon making the oath, and giving an indemnifying bond, according to the law in attachment cases. But, without either a valid judgment against them, or such security against an abuse of this process of the court, no judgment can lawfully be rendered against their debtor, as a garnishee, requiring him to pay to another what he owes to them.

The proceeding by garnishment is a summary and statutory remedy; and the Probate Court is not one of general jurisdiction. In such a case, its acts and rulings are void, if the record does not show existence of the jurisdictional facts upon which depends its authority to proceed and render judgment. In this instance, those jurisdictional facts did not exist. The supposed judgment against the garnishee, in the Probate Court, is, in law, no judgment at all. It follows, that the bill in this cause, founded upon it, is, for that reason, without equity, and must fail.

Let the decree of the chancellor, overruling the demurrer, be reversed; and the bill, it not being amendable, be here dismissed. The next friend of the appellee must pay the costs in this court, and in the Chancery Court.

BRICKELL, C. J., dissenting.